# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| DWIGHT KELLY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AUDI OF AMERICA, LLC and VOLKSWAGEN GROUP OF AMERICA, INC.,<br><br>Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Rosemary M. Rivas
(*Pro hac vice* forthcoming)
David Stein
(*Pro hac vice* forthcoming)
Rosanne L. Mah
(*Pro hac vice* forthcoming)
GIBBS LAW GROUP LLP
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
rmr@classlawgroup.com
ds@classlawgroup.com
rlm@classlawgroup.com

Michael A. Caplan
Georgia Bar No. 601039
T. Brandon Waddell
Georgia Bar No. 252639
Ashley C. Brown
Georgia Bar No. 287373
CAPLAN COBB LLC
75 Fourteenth Street, NE, Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
mcaplan@caplancobb.com
bwaddell@caplancobb.com
abrown@caplancobb.com

*Attorneys for Plaintiff Dwight Kelly and the Putative Class*

Plaintiff Dwight Kelly, individually and on behalf of all others similarly situated, brings this class action lawsuit against Defendants Audi of America, LLC and Volkswagen Group of America, Inc. ("Defendants") and alleges as follows:

**INTRODUCTION**

1.     This case arises from Defendants' failure to disclose or adequately repair a dangerous and widespread defect in high voltage lithium-ion batteries equipped in certain Audi e-tron SUV electric vehicles (EVs), model years 2019-2024, that have been subjected to recalls beginning in December 2023.[1] The e-tron SUV is Audi's first all-electric car. In 2019, Audi's e-tron was named a top safety pick over others like Tesla's Model S or the Chevy Bolt, allowing Defendants to sell more cars and generate more profits. The Class Vehicles, however, contain an unsafe defect.

2.     The defect causes the batteries to lose power and worse, short circuit, thereby creating the risk of a fire (hereinafter, "Battery Defect"). The Battery Defect presents an unreasonable safety risk to drivers and passengers of the Class Vehicles and to people in residential homes and other structures where the vehicles are parked

---

[1] The subject vehicles are the Audi e-trons that have been recalled as identified herein and include the following vehicles: 2019-2022 Audi e-tron Quattro; 2020-2022 Audi e-tron Sportback Quattro; 2022-2024 Audi RS e-tron GT; and the 2022-2024 Audi e-tron GT ("Class Vehicles").

or nearby. Defendants have been aware of the Battery Defect since April 2020, when Audi received a claim from outside of the United States alleging that the high voltage battery pack in an Audi e-tron quattro vehicle caused a fire. Audi investigated the incident and since then, has learned about several other fires and about numerous owner complaints about the Battery Defect.

3.     Defendants began piecemeal recalls in December 2023 of certain Audi e-tron vehicles, culminating in the most recent recall announced in September 2024 involving several thousand more Class Vehicles. Unfortunately, the recalls do not address the root cause of the defect, and Defendants have not agreed to affirmatively repair or replace all the defective batteries. Rather than identifying a repair or replacement of all the defective batteries, the recalls instruct Audi e-tron owners to limit charging to 80% capacity, resulting in a reduction of the advertised range that Audi e-tron owners and lessees paid for and requiring owners to charge the Class Vehicles more frequently.

4.     As a supposed final remedy, Defendants propose to have dealers install a diagnostic software update. But that update will not be available until sometime during the first quarter of 2025; Defendants have not provided an exact date. The software update will purportedly allow Defendants to monitor data from the Class Vehicles for anomalies in the battery and when one is spotted, to replace the affected battery modules. Apart from the failure to address the serious risk of fire posed by

the Battery Defect *now*, there is no certainty as to when the diagnostic software update will be available and whether it will be sufficient.

5.      But even if the software update can successfully discover all data anomalies and predict a problem—which is an open question that won't be answered, at best, for months—Defendants admit that the batteries may have problems in the future by virtue of the monitoring that Audi dealers need to undertake. Audi e-tron owners who do not have the software update receive no warnings if the battery modules experience a short circuit.

6.      Audi e-tron owners trusted and relied on the Audi brand and Defendants' representations and are left with a ticking time bomb. Defendants have left their customers with two terrible choices: owners can decide to stop driving their vehicles for which they paid approximately $70,000 or more, or they can continue driving the e-trons at the risk of losing power while driving on a highway or, even worse, experiencing a fire. To date, Defendants have been unable to develop, implement, or deliver an adequate repair to fully address the Battery Defect in all the Class Vehicles, and instead seem to have adopted a wait and see approach which is woefully unsatisfactory to Plaintiff and the proposed Class members.

7.      Apart from failing to offer a concrete timeline for addressing the Battery Defect in all the Class Vehicles, Defendants have not offered to provide adequate compensation for the significant limitations placed on the Class Vehicles,

and in fact, it is unclear if Defendants' purported remedy will fully resolve the Battery Defect. Plaintiff and Class members are left with Class Vehicles that cannot function as advertised; cannot be charged to the advertised range; require more frequent and less convenient charging times and locations; and that may spontaneously lose power while driving, or worse, spontaneously catch fire; thereby posing significant risk of harm to owners or lessees and their passengers, to people nearby and to property, and to the Class Vehicles themselves.

8.      Due to Defendants' omissions and active concealment of material facts, Plaintiff and Class members have suffered out of pocket losses, including, but not limited to, overpayment for the Class Vehicles at the point of sale, and Plaintiff and Class members have been deprived of the benefit of their bargain. Additionally, the undisclosed Battery Defect has significantly diminished the value of the Class Vehicles, more so than is typical with gas powered vehicles.

9.      Plaintiff Kelly, individually and on behalf of all others similarly situated, brings claims against Defendants for fraudulent omission/concealment, negligent omission/concealment, and breach of implied warranty, and seeks all available monetary relief, including damages and all appropriate equitable relief.

## PARTIES

10.    Plaintiff Dwight Kelly is a resident and citizen of Cumming, Georgia. Plaintiff Kelly bought a 2019 Audi e-tron quattro in August 2020 from Audi North America, an authorized Audi dealership located in Roswell, Georgia.

11.    Defendant Audi of America, LLC ("Audi") is a Delaware limited liability company that maintains its headquarters and principal place of business in Herndon, Virginia. Audi is a wholly-owned subsidiary of Defendant Volkswagen Group of America, Inc. Audi is responsible for the marketing and sale of the Class Vehicles in the United States.

12.    Defendant Volkswagen Group of America, Inc. ("Volkswagen") is a citizen of, and incorporated in Delaware and maintains its headquarters and principal place of business in Reston, Virginia. Volkswagen is the parent company of Audi and is involved in the marketing and sale of Audi vehicles in the United States, including the Class Vehicles.

## JURISDICTION AND VENUE

13.    The amount in controversy in this matter exceeds $5,000,000, as each member of the proposed Class of thousands may be entitled to thousands of dollars in damages, exclusive of interest and costs. Plaintiff and Defendants are citizens of different states. Diversity jurisdiction is proper under the Class Action Fairness Act of 2005 ("CAFA") pursuant to 28 U.S.C. § 1332(d)(2).

14.    Defendants are subject to personal jurisdiction in this Court because they engaged in substantial, continuous, systematic, and non-isolated business activity within the state of Georgia.

15.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims emanated from this District.

## FACTUAL ALLEGATIONS

### A.    Background

16.    Defendants market and sell the Audi e-tron series of vehicles, the first fully electric luxury line under the Audi brand. The e-tron is available in various models: e-tron Quattro, e-tron Sportback Quattro, e-tron GT, and RS e-tron GT.

17.    The e-tron was originally announced as a concept car in 2009 as a plug-in hybrid vehicle. In 2019, however, when the e-tron went into production, it was designed and manufactured as Audi's first fully electric vehicle. Although Defendants do not release sales figures, based on the number of vehicles recalled, Defendants have sold over 30,000 class vehicles between 2019 and 2024.[2]

---

[2] *See* https://www.consumerreports.org/cars/car-recalls-defects/audi-recalls-e-tron-electric-suvs-for-fire-risk-a5306993546/; https://www.kbb.com/car-news/recall-alert-audi-e-tron-gt-porsche-taycan/ (last visited Dec. 20, 2024).

18.    Defendants marketed the first all-electric vehicle as "electrified, performance oriented and fit for every aspect of daily life."[3] According to Filip Brabec, Vice President of Product Management at Audi America: "We focused on everyday usability of the car, and we focused on making the transition from internal combustion car to electric car as easy and seamless as possible. We didn't want to create a fringe quirky car. We wanted to create a very mainstream car."[4]

19.    When the e-tron was launched, Audi announced that the e-tron's 95-kWh lithium-ion battery would provide an EPA-estimated range of 204 miles.[5] Defendants also touted the e-tron's advanced thermal management systems, and the "sophisticated measures" it took to protect the high-voltage battery against damage impacts, including a "full clad underbody including aluminum plate to help protect the high-voltage battery."[6]

---

[3] *See* https://media.audiusa.com/releases/266 (last visited Dec. 20, 2024).

[4] *See* https://www.theverge.com/2018/9/18/17871304/audi-etron-specs-price-sale-tesla (last visited Dec. 20, 2024).

[5] *See* https://www.kbb.com/car-news/2019-audi-e-tron-204-mile-range-announced/?utm (last visited Dec. 20, 2024).

[6] *See* https://www.audi-technology-portal.de/en/download?file=1946&utm; https://media.audiusa.com/releases/266 (last visited Dec. 20, 2024).

20.    Defendants bragged about the e-tron's charging speed and flexibility: "Designed for efficiency and integration, the e-tron is engineered for both AC and DC charging via the widespread SAE J1772 and Combined Charging System (CCS) standards. In an industry first to-date, the e-tron debuts a DC fast charging capability of up to 150 kW available at select high-speed public charging stations, this capability can deliver up-to an 80 percent charge in only approximately 30 minutes. For customers' residential charging needs, a standard 9.6 kW AC capsule charger (Level 2, 240-volt/40 amps) is provided and designed to deliver a fresh charge overnight. This charger will include plugs that can utilize both a standard 120-volt household outlet (1.2 kW) as well as a fast-speed 240-volt NEMA 14-50 outlet (9.6 kW)."[7]

21.    According to Defendants: "When developing the Audi e-tron, the exterior designers worked in close collaboration with the aerodynamics experts. The result of this attention to aero is an array of high-tech efficiency solutions, such as the regulated cooling air inlet with ducts for cooling the front brakes and the adaptive, speed-dependent air suspension that is standard on the Audi e-tron. The standard-fit 20-inch wheels are aerodynamically optimized and fitted with

---

[7] *See* https://media.audiusa.com/releases/266 (last visited Dec. 20, 2024).

255/50 tires. These are especially engineered for their ultralow rolling resistance."[8]

22.    The battery system itself consists of "36 cell modules in square aluminum housings about the size of a shoe box."[9] Each module is equipped with 12 pouch cells for a total of 432 cells.

23.    Defendants represented the Audi e-trons as having the following ranges:

| MODEL | EPA Estimated Range |
|---|---|
| 2019 e-tron quattro | 204 miles |
| 2020 e-tron Sportback quattro | 218 miles |
| 2021 e-tron quattro | 222 miles |
| 2021 e-tron Sportback quattro | 218 miles |
| 2022 e-tron quattro | 222 miles |
| 2022 e-tron Sportback quattro | 218 miles |
| 2022 e-tron GT | 238 miles |
| 2022 RS e-tron GT | 232 miles |
| 2023 e-tron GT | 238 miles |
| 2023 RS e-tron GT | 232 miles |
| 2024 e-tron GT | 249 miles |
| 2024 RS e-tron GT | 249 miles |

---

[8] *Id.*

[9] *See id.*

**B.    The Battery Defect**

24.    In an EV, the electric battery is the most important component because it stores the chemical energy and converts it to electricity to power the motor and propel the car. The battery also powers the vehicle's electrical systems when it is not in use, such as the central locking system, the alarm, and other security features. The battery also powers the vehicle's onboard computer and diagnostic systems.

25.    The amount of electrical energy a battery can store is referred to as capacity, which is measured in kilowatt-hours (kWh). The battery's design influences how fast it can be recharged, and its size and capacity impacts how far the car can travel on a single charge (called "range").

26.    Most batteries in electric vehicles are lithium-ion, which allows for higher energy density, meaning that the lithium-ion battery can store a lot of energy in a small mass. Lithium-ion batteries also have long cycle life, meaning the battery can perform through numerous charge and discharge cycles before it no longer holds a charge.

27.    Lithium-ion batteries, however, have disadvantages. EV manufacturers are aware that lithium-ion batteries have a long history of fire

issues.[10] Because they can store significant amounts of energy, they can overheat which can result in a fire or explosion. This is called thermal runaway: when the battery's temperature rapidly and uncontrollably rises, leading to a fire. Overheating can result from short circuiting in a battery cell within the battery's module. External short circuiting occurs when there is unintended direct contact between the positive and negative terminals, thereby allowing energy to flow unimpeded, while internal short circuiting can occur within a single cell due to a manufacturing defect. The batteries in the Class Vehicles are particularly prone to this problem because they are built on high voltage technology versus the standard technology.

28.    The Battery Defect in the Class Vehicles causes a short circuit in the battery module, which increases the risk of a fire, or thermal event.

**C.    Consumer Complaints Reveal the Magnitude of the Battery Defect.**

29.     Below are just a few examples of the numerous complaints Class Vehicle owners and lessees have lodged with the National Highway Transportation Safety Administration ("NHTSA") regarding the Battery Defect:

---

[10] *See How Lithium Ion Batteries in EVs Catch Fire*, https://adreesh-ghoshal.medium.com/how-lithium-ion-batteries-in-evs-catch-fire-9d166c5b3af1#:~:text=Batteries%20Age&text=Similarly%2C%20at%20high%20s peeds%2C%20discharge,will%20result%20in%20a%20fire (last visited Nov. 25, 2024).

- <u>2019 Audi E-Tron</u>: My wife was driving our Audi e-tron and after several minutes driving she got she got very large red alert that said "ELECTRICAL SYSTEM: MALFUNCTION! - SAFELY STOP VEHICLE". She immediately pulled over to the side of the road into a parking lot just before the electric motors shut down completely. This put my wife in an extremely dangerous situation, and we consider her to be very lucky that she was not on a highway or in the middle of an intersection when this happened. The car became COMPLETELY immobile, just dead. We towed the vehicle to the dealership, and they informed us that it would be a minimum of three weeks before they can even begin to diagnose this issue. My service advisor has informed me that there is one other Audi e-tron currently at that dealership that has exactly the same issue as I have. Our Audi e-tron is a 2019 with 31,000 miles and the other person who has this same issue has 29,000 miles. THIS CAR IS EXTREMELY UNSAFE FOR THE ROAD. I have a family and there is no way I will feel comfortable letting them ride in this vehicle even if it is fixed. (NHTSA ID Number: 11460082, Date Complaint Filed: 04/07/2022).

- <u>2019 Audi E-Tron</u>: The contact owns a 2019 Audi E-Tron. The contact received notification of NHTSA Campaign Number: 23V867000 (Electrical System) and 23V842000 (Electrical System) however, the parts to do the recall repairs were not yet available. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The manufacturer was made aware of the issue. . . . (NHTSA ID Number: 11564562, Date Complaint Filed: 07/22/2023)

- <u>2019 Audi E-Tron</u>: I discovered the following recall on your site but the AudiUSA site does not show the issue. I am alarm at the serious nature of this recall and Audi is only saying it does no have a remedy yet. that is unacceptable considering what could happen. We need a faster remedy to this very dangerous situation. A timely manner is right now, not later in the year. Dec 20,2023 Manufacturer Recall Number93U9 NHTSA Recall Number23V867 Recall StatusRecall Incomplete, remedy not yet available Summary A potentially critical self-discharge condition exists in certain high-voltage battery modules that, in some instances, may lead to thermal overload, possibly resulting in smoke or a fire. A high-voltage battery overheating increases the risk of a fire. Affected high-voltage

batteries may experience a loss of range and/or performance as an early indication. Safety Risk A high-voltage battery overheating increases the risk of a fire. Remedy REPAIR NOT YET AVAILABLE Audi is working on an interim measure to help provide support for vehicles in this recall until the remedy becomes available. More information will be provided at a later date once the details of the interim measure are defined. (NHTSA ID Number: 11565809, Date Complaint Filed: 01/16/2024)

- 2021 Audi E-Tron: The contact owns a 2021 Audi E-Tron. The contact received notifications of NHTSA Campaign Numbers: 23V867000 (Electrical System) and 23V842000 (Electrical System) however, the parts to do the recall repairs were not yet available. The contact stated that the manufacturer exceeded a reasonable amount of time for the recall repairs. The manufacturer was made aware of the issue. The contact had not experienced a failure. VIN tool confirms parts not available. (NHTSA ID Number: 11567324, Date Complaint Filed: 01/23/2024)

- 2019 Audi E-Tron: We have several recalls for this car the battery and the ball joints are bad we called the dealer for help with the issue and never received any update , we can not drive this car due to a fire

hazard and it is a real safety issue for all the public and our selves we need help. Please help my family thanks and god bless. (NHTSA ID Number: 11567520, Date Complaint Filed: 01/24/2024)

- 2021 Audi E-Tron: There are 2 active/open recalls for my 2021 Audi etron vehicle. The recalls were initiated by the manufacturer 2 months ago and there currently are no repairs available for either recall. Both recalls present a severe safety risk to consumers and present risks to their homes. Dec 20, 2023 Manufacturer Recall Number. 93V2 NHTSA Recall Number 23V867 A potentially critical self-discharge condition exists in certain high-voltage battery modules that, in some instances, may lead to thermal overload, possibly resulting in smoke or a fire. A high-voltage battery overheating increases the risk of a fire. Affected high-voltage batteries may experience a loss of range and/or performance as an early indication. Safety Risk A high-voltage battery overheating increases the risk of a fire. . . . (NHTSA ID Number: 11571567, Date Complaint Filed: 02/13/2024)

- 2021 Audi E-Tron: The contact owns a 2021 Audi E-Tron. The contact stated that while driving at an undisclosed speed, a message displayed reading "Electrical System Malfunction: Safely Stop the

Vehicle," after which the vehicle lost motive power. The contact was able to coast to the shoulder of the roadway, where the vehicle failed to restart. Several unknown warning lights were illuminated. The vehicle was towed to the dealer, who was unable to determine the cause of the failure. The vehicle was not repaired. After investigating the failure, the contact related the failure to NHTSA Campaign Number: 23V867000 (Electrical System) and the VIN was included, but parts were not yet available. The manufacturer was not notified of the failure. The failure mileage was 26,000. (NHTSA ID Number: 11572096, Date Complaint Filed: 02/15/2024)

- 2019 Audi E-Tron: I received the letter about 23V867 recall on this vehicle over two weeks ago. Letter indicates vehicle requires repair (per Audi's online data as recorded with data collection performed from the vehicle itself) NOW. I called to make an appointment with Audi Silver Spring [XXX] ) and initially I was told they will have to order new battery modules. A week later (this morning 2/29/2024) I was texted that they cannot perform the repair as they do not have cell balancer tool :( and this will take another two weeks. So while Audi indicates my vehicle is in imminent fire hazard, yet their dealers are not capable of repairing this issue, even though letter indicates

repairs should be performed now. I am extremely concerned with the safety of the vehicle, passengers and my property while vehicle is parked on the driveway due to fire hazard. Thank you, [XXX] INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6) (NHTSA ID Number: 11574623, Date Complaint Filed: 02/29/2024)

- <u>2022 Audi E-Tron</u>: There is a recall for this vehicle for battery overheating and vehicle catching on fire. Audi is unable to remedy this issue at this time. I notice routinely that the charging wire used to charge this vehicle becomes extra hot during charging. I have discussed this issue with Audi but they claim they cannot help me at this time. I'm worried about danger of fire. Please help. (NHTSA ID Number: 11579548, Date Complaint Filed: 03/26/2024)

- <u>2023 Audi E-Tron GT</u>: [XXX] Battery risk has not been repaired for any remediation since Dec 2023 failed remediation at this point. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6) (NHTSA ID Number: 11580202, Date Complaint Filed: 03/30/2024)

- <u>2022 Audi E-Tron Sportback</u>: The contact owns a 2022 Audi E-Tron S. The contact received notification of NHTSA Campaign Number:

23V867000 (Electrical System) however, the part to do the recall repair was not yet available. The local dealer was contacted and confirmed that parts to do the recall repair were not yet available. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The manufacturer was not made aware of the issue. The contact had not experienced a failure. Parts distribution disconnect. (NHTSA ID Number: 11580888, Date Complaint Filed: 04/03/2024)

- 2019 Audi E-Tron: Battery has a recall in place for fire hazard..I contacted the dealership and they have no path for a repair . They have also denied my buy back request. (NHTSA ID Number: 11582497, Date Complaint Filed: 04/12/2024)

- 2019 Audi E-Tron: The contact owned a 2019 Audi E-Tron. The contact stated that while the vehicle was parked in a garage, there was a sudden odor of smoke detected. The contact stated upon discovering the smoke, the contact noticed fumes and flames coming from the engine compartment and the rear undercarriage. The contact stated the vehicle was unoccupied at the time of the fire. The fire was extinguished by the Fire Department. A Fire report was filed. A Police report was not filed. The dealer was contacted. The vehicle

was destroyed. The manufacturer was notified of the failure. The failure mileage was approximately 30,000. (NHTSA ID Number: 11584092, Date Complaint Filed: 04/19/2024)

- <u>2019 Audi E-Tron</u>: The contact owns a 2019 Audi E-Tron. The contact received notification of NHTSA Campaign Number: 23V867000 (Electrical System) however, the part to do the recall repair was not yet available. The local dealer was contacted. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The manufacturer was made aware of the issue. The contact had not experienced a failure. Parts distribution disconnect. (NHTSA ID Number: 11584432, Date Complaint Filed: 04/22/2024)

- <u>2024 Audi E-Tron Q4</u>: have signed a lease on an Audi Q4 S line prestige and picked it up Saturday [XXX] afternoon, leaving the dealership the car had a yellow warning light, I texted sales team who said it's ok. On the drive home (Oakland to West SJ), while driving on [XXX] (about 30 min in) the driver door opened while driving, I had to stop on side of freeway and close the door. 5 min later I got home, by then battery warning was red I stopped in my driveway and called dealership who asked me to drive car to service in Steven's

creek, however the car refused to go into gear and just stopped. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6) (NHTSA ID Number: 11598073, Date Complaint Filed: 07/01/2024)

- 2019 Audi E-Tron: The contact owns a 2019 Audi E-Tron. The contact received notification of NHTSA Campaign Number: 23V867000 (Electrical System); however, the part to do the recall repair was not yet available. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The dealer was made aware of the issue and confirmed that parts were not yet available. The manufacturer was not made aware of the issue. The contact had not experienced a failure. Parts distribution disconnect. (NHTSA ID Number: 11601504, Date Complaint Filed: 07/12/2024)

- 2019 Audi E-Tron: I received the recall notice and I attempted to get my battery inspected and interim software installed on my vehicle on 9/9 at Audi North Atlanta. I was told that neither can be done because they do not have the parts needed for the inspection or the software install. When I pressed for more information, I was told that the inspection and software update will make the vehicle undriveable

until they have the required parts. I was told I would be contacted when the parts were in so that my vehicle could be inspected and the software update could be installed. On the evening of 9/12, when I started my vehicle a red warning light appeared with the message "Electrical system malfunction! Safely stop the vehicle". I contacted the nearest Audi dealership (Audi Gwinnett) and told them I think I'm having an issue related to the recall. They said they could check the vehicle but they didn't have any appointments for a week. I let the vehicle sit and the warning went away. I attempted to make it to Audi North Atlanta (who have worked on the battery of my vehicle before) before the closed, but I was unable to. The next morning (9/13), the warning light had returned with the same message as before. I again let the vehicle sit until the warning went away. I took the vehicle to Audi North Atlanta and was told again that my vehicle cannot be inspected for the recall and that I am responsible for a diagnostic fee since the warning light is not on. I asked why this wasn't attached to the recall inspection and was told that the warning light could be on for any reason. I again asked about why they couldn't do the free recall inspection and again I was told they do not have the required parts. I have reviewed the documents associated

with the 93U9 recall (NHTSA #23V867000) and the only part required for the inspection and software update is a sticker to remind me not to charge my vehicle past 80%. (NHTSA ID Number: 11614374, Date Complaint Filed: 09/13/2024)

- <u>2022 Audi E-Tron:</u> I'm deeply concerned about the safety risks my family faces due to unresolved Audi recalls. On December 19 and 20, 2023, Audi issued two recalls: one for high-voltage battery modules that may self-discharge, leading to overheating and an increased risk of fire, and another for the 220V/240V charging cable, which can overheat home wiring, posing a serious fire hazard. On September 19, 2024, I took my car to Niello Audi to address these recalls, but they advised me to take the car home despite the significant safety risks. The service representative told me I couldn't receive a replacement charging cable because I did not have the original one; as the second owner, I never received it from the previous owner. He also mentioned that there was no remedy available for the battery issue and to come pick up my car the next day. I'm using an aftermarket charging cable, which the representative warned could increase the risk of fire. But I cannot get the cable required because I do not have the original. I transport my

two young children in this car, and the thought of driving an unsafe vehicle is terrifying. On September 20, 2024, I contacted Audi America to file a claim and initiate the buyback process, as there is no safe solution available. I expressed my urgent concerns and requested a loaner car while the buyback is processed, but my request was denied despite stating it clearly was a safety issue. The Audi America representative told me to pick up my car and drive it, even after acknowledging the safety risks. Niello Audi provided a loaner for only one week, which is not long enough to navigate this complex process. This situation has left me feeling incredibly unsafe. My home is at risk of fire due to the unresolved charging cable issue, and I continue to worry about driving a vehicle with these serious problems. The ongoing recalls create an alarming risk for me and my family. (NHTSA ID Number: 11615697, Date Complaint Filed: 09/20/2024)

- 2021 Audi E-Tron: The contact owns a 2021 Audi E-Tron. The contact received notification of NHTSA Campaign Number: 23V867000 (Electrical System); however, the part to do the recall repair was not yet available. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The

dealer was made aware of the issue and confirmed that parts were not

yet available. The manufacturer was made aware of the issue and

confirmed that parts were not yet available. The contact had not

experienced a failure. VIN tool confirms parts not available.

(NHTSA ID Number: 11627497, Date Complaint Filed: 11/26/2024)

**D.    Defendant's Knowledge of the Defect**

30.    On information and belief, Defendants knew or should have known

about the Battery Defect in the Class Vehicles at least as early as April 2020, if

not sooner, and became aware of it through a number of sources, including: (1)

Defendants' own pre-sale durability testing on Audi vehicles and all components,

including the electric batteries; (2) consumer complaints filed with the NHTSA,

including consumer complaints reported directly to Defendants; (3) warranty

claims, dealership repair records, and part sales with Defendants; (4) public

reports regarding battery issues with Class Vehicles, including reports of fires; (5)

public reports regarding battery issues, including reports of fires, with the Porsche

Taycan EVs, which have similarly defective electric batteries/battery components

supplied by the supplier Defendants used here, LG Energy Solutions; and (6)

safety recalls and technical service bulletins issued by Defendants regarding the

Battery Defect and attempts to fix the defect.

31.    As renowned designers and manufacturers of luxury vehicles, Defendants conduct extensive pre-sale durability testing on their Audi vehicles and components to ensure they are free from defects and meet the company's rigorous specifications. This includes testing the lithium-ion batteries installed in the Audi e-trons, the first Audi consumer electric vehicle. For decades, Audi has operated extensive testing facilities, and recently opened the new Audi Vehicle Safety Center in Inglostadt. The Audi Vehicle Safety Center includes a run-up track and a mobile 100-ton crash block, with the ability to collide two cars at a 90-degree angle, among other things.

32.    Defendants emphasize the long tradition at Audi of "passive testing," i.e., "everything that reduces the consequences of an accident for car occupants and road users, including pedestrians."[11]

33.    Defendants extensively marketed the safety and performance features of the Audi e-tron. With regard to the electric batteries, Defendants represented that the Audi e-tron went through "Rigorous battery testing[.]"[12] According to the Audi website, "Audi e-tron lithium-ion batteries are designed

---

[11] *See* https://www.audi-mediacenter.com/en/press-releases/audi-eroeffnet-neues-fahrzeugsicherheitszentrum-15587 (last visited Jan. 2, 2025).

[12] *See* https://www.audiusa.com/en/ev-hub/e-tron-technology (last visited Jan. 2, 2025).

using an advanced thermal management system. This sophisticated technology allows for quick DC charging capabilities and consistent vehicle performance in both hot and cold climates."[13]

34.    Audi's website further states, "Audi e-tron vehicles are thoroughly tested to ensure consistent performance and longevity. Our engineers assess performance in extreme heat and cold temperatures—from the desert to Artic."[14]

35.    The Battery Defect is the type of defect that Defendants' pre-sale durability testing would reveal because the Battery Defect is a manufacturing defect present in the vehicles before they leave the plant and are ever driven.

36.    Defendants are also required by law to regularly monitor the NHTSA databases and analyze NHTSA complaints, to identify potential safety defects in their vehicles and to determine whether recalls should be issued. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000). Accordingly, Defendants have knowledge of all NHTSA complaints.

37.    On information and belief, Defendants' customer service departments, warranty departments, among other personnel, regularly monitor customer complaints posted to NHTSA's public database, including their

---

[13] *See id.*

[14] *See id.*

respective websites, and the internet; regularly monitor and respond to customer calls concerning vehicle issues, including component defects; and collect and analyze field data, including but not limited to, repair requests made at Defendants' dealerships and service centers, technical reports prepared by its engineers and authorized technicians that have investigated vehicles for which warranty coverage is requested, and/or identified defect trends, warranty claims data, and part sales reports.

38.    For warranty repairs, Defendants require dealerships and service centers to provide them with detailed reports of problems and fixes that describe the complaint, cause, and correction. Defendants also require dealerships and service centers to save the broken or defective part for purposes of conducting an audit on the dealership and service centers should the need arises, or otherwise confirm the warranty repair. Defendants will not pay the dealerships and service centers for repairs if the complaint, cause, and correction are not described in detail. Accordingly, dealerships and service centers keep detailed and accurate records and information about warranty repairs.

39.    On information and belief, the customer service departments, warranty departments, and other departments, such as engineering and safety at Audi, Porsche, and Volkswagen, interact with each other and discuss potential

issues or defects in the Class Vehicles because they share designs and components.

40.    In April 2020, according to a letter from Volkswagen to NHTSA, Audi learned of a claim outside the United States alleging that the high-voltage battery pack in an Audi e-tron Quattro caused a fire. Audi, along with the battery supplier—LG Energy Solutions—opened an investigation in June 2020 into the claim to determine the root cause of the fire.

41.    Then, between mid-2020 and mid-2023, Audi learned of additional thermal event cases involving the Audi e-trons. Working in conjunction with LG Energy Solutions, Audi conduced detailed investigations, onsite vehicle inspections, and part analyses to determine the origin of the fires. These investigations and analyses pointed to the high voltage electric battery's cell module controller.

42.    From July 2023 through November 2023, Defendants noticed an increase in field cases. Defendants analyzed the data from those cases which again pointed to problems with the high voltage electric battery's modules.

43.    Volkswagen's letter to NHTSA indicated that Defendants were aware of five thermal events (fires) that occurred in the United States alone on the following dates: July 19, 2022; November 21, 2022; October 27, 2023; November 5, 2023; and November 9, 2023.

44.    Defendants also knew about the Battery Defect from the fire incidents that occurred in the high voltage electric batteries equipped on the Porsche Taycan EVs. Volkswagen merged with Porsche in 2011 and is the controlling entity, with Porsche operating under the Volkswagen umbrella, like Audi. As part of the same family, Volkswagen's subsidiaries, through their employees including engineers, communicate with one another. Therefore, Defendants were aware, or should have been aware, of the Battery Defect in the Class Vehicles due to the similar battery defects that existed in the Porsche Taycan EVs, which Porsche became aware of in February 2020.

45.    Indeed, the electric batteries equipped on the Taycan EVs were either supplied by, or contained parts supplied by, LG Energy Solutions, the HV battery supplier for the Audi e-trons.

46.    Specifically, in February 2020, shortly after Porsche launched the Taycan, one of the first Porsche Taycans on the market caught fire in a residential garage in Florida, causing damage to both the EV and the structure. Calvin Kim, a spokesperson for Porsche, told *Car and Driver*: "We were made aware of an incident at a residential address where one of our cars was parked overnight on

the 16th of February. The formal investigation has begun and we remain ready to assist if called upon."[15]

47.    News reports also indicate that another Taycan went up in flames in Australia in October 2021. The vehicle, a 2021 Taycan Cross Turismo that cost the owner $350,000, was brand new when the fire erupted. The fire was sealed in the lithium-ion battery and firefighters had difficulty extinguishing it. Porsche was advised of the incident.[16]

48.    According to a "Part 573 Safety Recall Report," submitted on March 20, 2024, to the NHTSA pursuant to 49 C.F.R. § 573, Porsche had become aware of a single vehicle battery fire that occurred shortly after charging in 2021. It is not clear if the report is related to the October 2021 incident in Australia. Nevertheless, the report indicates that Porsche investigated the incident and "began obtaining comparable undamaged batteries from the field for analysis."[17]

---

[15] *See* Porsche Taycan Goes up in Flames in Florida Garage (last visited Nov. 25, 2024).

[16] *See Porsche Fire a Challenge for CFA Crews,* https://www.mpnews.com.au/2021/10/18/porsche-fire-a-challenge-for-cfa-crews/, last visited Nov. 25, 2024.

[17] *See* https://static.nhtsa.gov/odi/rcl/2024/RCLRPT-24V215-9738.PDF (last visited Nov. 25, 2024).

The report also indicates that in "2023, Porsche became aware of further instances of battery fires in Taycan vehicles after charging."[18]

49.     And in 2023, Volkswagen was sued in Germany based on a fire that erupted in 2022 on a massive cargo ship—the *Felicity Ace*—near the Azores archipelago in the Atlantic Ocean. The cargo ship ultimately sank with thousands of cars on board. According to that lawsuit, the fire originated from the lithium-ion battery of a Porsche model.[19] The only Porsche EV available at the time was the Taycan.

50.     Defendants should have also known about the Battery Defect because the battery or its defective components were supplied by LG Energy Solution WROCLAW sp. z o.o., a subsidiary of LG Energy Solution, Ltd., which through its subsidiaries, manufactured the defective batteries at issue in the Chevy Bolt electric vehicles. Consumers who bought the Chevy Bolts with defective batteries filed the action titled, *In re Chevrolet Bolt EV Battery Litig.,* Case No. 2:20-13256-TGB-CI, which recently settled for $150 million. With respect to the

---

[18] *See id.*

[19] *See Volkswagen Faces Pair of Lawsuits Over Claim Porsche EVE Battery Sparked Ship Fire*,
https://www.insurancejournal.com/news/international/2024/03/05/763499.htm (last visited Nov. 25, 2024).

Chevy Bolts, the first in a series of recalls involving defective batteries was announced on November 13, 2020.

51.     Through the channels, methods, sources and incidents described herein, Defendants knew about the Battery Defect and its potential danger at least as early as February 2020 with respect to the Porsche Taycan EVs, or at least since April 2020 with respect to the fire incident that involved an Audi e-tron outside the United States.

### E.   Defendants' Recalls

52.     Defendants have issued several piece-meal recalls relating to the electric battery in Audi e-trons.

53.     Audi announced the first voluntary recall of the e-tron in June 2019 (Manufacturer Recall No. 93E8). Specifically, Defendants recalled 1,646 e-trons due to a defect involving the battery cells that could lead to a short circuit and spark a fire. At the time, Audi learned that globally, a "battery fault light" turned on. Audi announced that it would continue selling the e-trons, however.

54.     Then, on or around December 28, 2023, Defendants announced a safety recall of 26,866 Audi e-trons stating in a report titled, "Part 573 Safety Recall Report 23V-867," that certain vehicles have "experienced thermal overload with smoke or fire occurring underneath the vehicle from the high-voltage battery" and that the overheating of a high-voltage battery "increases the risk of a

fire." NHTSA Recall No. 23V-867 (Manufacturer Recall No. 93U9/93V2). The safety recall report also indicated that affected batteries "may experience a loss of range and/or performance as early indication." The vehicles affected by the recall included model years 2019-2022 Audi e-tron Quattro and 2020-2022 Audi e-tron Sportback Quattro. The safety recall report stated that the final remedy would be the "installation of advanced onboard diagnostic software that will detect potential issues related to changes in battery module performance and will warn the driver before problems can develop." The software, however, will not be available until the first quarter of 2025. Additionally, the safety recall report cautioned owners to limit charging to 80% capacity where there is no online data available to Defendants or if there is online data available, where such data shows a potentially critical battery module.

55.    Then, on or around March 15, 2024, Defendants announced another recall relating to the Battery Defect, Recall No. 24V-726 (Manufacturer Recall No. 931A/931B). Defendants provided details about the recall Part 573 Safety Recall Report 24V-229, which stated that "Certain e-tron GT high-voltage batteries may experience short circuits within the battery modules, which can lead to thermal events and, in some cases, fires. A short circuit in the high-voltage battery module can increase the risk of a thermal event or fire." The March 15,

2024 recall involved certain model year Audi e-trons: 2022-23 Audi RS e-tron GT and 2022-23 Audi e-tron GT.

56.     According to the March 2024 safety recall report, "On December 6, 2023, Audi was informed by Porsche that a safety-related defect in HV battery modules in certain Porsche Taycan vehicles had been determined and a safety recall had been decided. Because the Audi e-tron GT is a substantially similar vehicle and uses the same HV battery modules, Audi submitted a foreign recall report under 49 CFR Part 579 and started the investigation for Audi. December 2023-March 2024: Audi started investigating this issue together with Porsche and the battery cell/manufacturer, using in particular data analytics and hardware analyses. With this additional investigation and analyses, on March 15, 2024, Audi determined that a safety-related defect exists in vehicles identified via data analytics and hardware analyses."

57.     According to the March 2024 safety recall report, Defendants would send owner notification letters on or before May 21, 2024 advising them to limit charging to a maximum of 80% of battery capacity and that as a final remedy, the high-voltage battery modules would be replaced in the affected vehicles.

58.     In or around September 29, 2024, however, Defendants expanded the prior recall due to the Battery Defect and reversed course on the proposed final remedy. Instead of affirmatively replacing the high-voltage battery modules in the

affected vehicles, diagnostic software will be installed in the affected vehicles. According to the September 2024 safety report, titled Part 573 Safety Recall Report 24V-726, new findings showed that "individual cells in the modules of the HV battery can change over the course of their lifetime, which requires continuous monitoring. We are therefore adapting our previous approach accordingly." The report further stated, "As a final remedy, an on-board diagnostic software will be installed on the vehicles to detect any future high-voltage battery module data anomalies. In case of anomalies, the affected modules in the high-voltage battery will be replaced."

59.    Additionally, the safety recall report cautioned owners to limit charging to a maximum 80% capacity for those vehicles where Defendants do not have access to online data, and for those vehicles where online data available to Defendants show a potentially critical battery module until the affected module can be replaced by an authorized Audi dealer. The safety recall report indicates that the diagnostic software will not be available until the first quarter of 2025. The affected vehicles subject to Recall No. 24V-726 (Manufacturer Recall No. 931A/931B) are certain 2022-2024 Audi RS e-tron GT and 2022-2024 Audi e-tron GT. A total of 6,499 Audi e-tron vehicles are the subject of Recall No. 24V-726.

60.    Audi's e-tron recalls are very similar to the Porsche Taycan recalls (Recall Nos. 23V842000, 24V215000, 24V217000, 24V732000 and 24v731000). The Porsche Taycan electric batteries or components were supplied by LG Energy Solutions, which also supplied the batteries or components in the Audi e-trons. Moreover, the Porsche Taycan recalls are due to a similar battery defect and the proposed final remedy is the same: diagnostic software that is supposed to predict problems in the battery modules.

61.    Unfortunately, the Audi recalls, like those in Porsche, do not involve affirmatively replacing the Defective Battery or a definitive repair or replacement of battery modules in all the Class Vehicles now or on a specific date. Moreover, owners are advised to only charge their vehicles to a maximum of 80% battery capacity until a software update can be installed, which is not expected until some unknown date in the first quarter of 2025. This limitation will result in a reduction of the advertised range and require owners to charge their Class Vehicles more frequently at inconvenient times and locations.

62.    The software update will purportedly allow Defendants to monitor the Class Vehicles for anomalies in the battery, and if one is detected, the dashboard will display a warning message and limit the charging capacity of the battery until it can be inspected and repaired if necessary. But even if the software update successfully discovers any and all data anomalies, the batteries may have problems in the future

and will require continuous monitoring. Audi e-tron owners who do not have the software update receive no warnings if the battery modules experience a short circuit.

### F.    Fraudulent Omission/Concealment Allegations

63.    At this time, Plaintiff is unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals employed by Defendants responsible for making false and misleading statements regarding the Class Vehicles and failing to disclose information Defendants knew regarding the Battery Defect to Plaintiff and other members of the putative class. Defendants are in possession of all of this information.

64.    Plaintiff's claims arise out of Defendants' fraudulent omission/active concealment of the Battery Defect from Plaintiff and other members of the putative class, despite Defendants' representations about performance, safety, and range.

65.    Plaintiff, at all relevant times, including at the time Plaintiff and Class members purchased their Class Vehicles, alleges that Defendants knew, or were at least reckless in not knowing, of the Battery Defect; Defendants had a duty to disclose the Battery Defect based upon their exclusive knowledge, the significant safety risks the Battery Defect created, and the fact that the Battery Defect related to an intrinsic and important quality of these electrical vehicles that neither Plaintiff nor other members of the putative class could have discovered through the exercise of ordinary prudence and caution; and Defendants never disclosed the Battery

Defect to Plaintiff and Class members at any time or place in any manner prior to any of the recalls, as alleged herein.

66. Defendants also actively concealed the Battery Defect by misrepresenting either directly or through their agents working at authorized Audi dealerships to Plaintiff and members of the putative Class who presented their vehicles for repair the nature, cause, and scope of the issues they had encountered with the batteries in their Class Vehicles.

67. Plaintiff and members of the putative Class reasonably relied upon Defendants' knowing, affirmative, and/or active concealment of the Battery Defect when they decided to purchase or lease Class Vehicles.

68. Plaintiff makes the following, additional specific concealment/omission-based allegations with as much specificity as possible through reasonable investigation and absent discovery into information available exclusively only to Defendant:

**Who**: Defendants actively concealed and failed to disclose the Battery Defect to Plaintiff and Class members by omitting it from all advertising and marketing materials, its website, brochures, while at the same time promoting the safety, reliability, durability, performance, and range of the Class Vehicles, as alleged herein. Plaintiff is unaware of, and therefore unable to identify, the true

names and identities of those specific individuals responsible for such decision-making.

**What**: that the Class Vehicles contain the Battery Defect, the attendant safety risks, and the actual fire incidents, as alleged herein. Defendants concealed and omitted the Battery Defect while making representations about the safety, reliability, durability, performance, long range, and other attributes of the Class Vehicles, as alleged herein.

**When**: Defendants concealed and omitted material information regarding the Battery Defect at all times while making representations about the safety, reliability, durability, performance, and long range of the Class Vehicles on an ongoing basis, from at least 2019, and continuing to the present. Defendants still have not disclosed the truth about the full scope of the Battery Defect in the Class Vehicles. And when consumers brought their vehicles to Audi dealerships or called Defendants' respective customer service and warranty departments complaining of the Battery Defect or inquiring about the Battery Defect, Defendants' authorized dealerships have denied any knowledge of an adequate repair for the Battery Defect. At least in these interactions with Plaintiff and members of the Class, Defendants' authorized dealerships and the personnel who worked at those dealerships acted as Defendants' agents in that they failed to disclose information regarding the Battery Defect at Defendants' direction or based upon Defendants' control of the information they

provided to them and permitted them to disclose regarding the batteries of Class Vehicles.

**Where:** Defendants concealed and omitted material information regarding the true nature of the Battery Defect in every form of communication they had with Plaintiff and Class member, and made representations about the safety, reliability, durability, performance, and long range of the Class Vehicles. Plaintiff is aware of no document, communication, or other place or thing, in which Defendants disclosed the truth about the full scope of the Battery Defect in the Class Vehicles prior to the recalls. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Defendants' websites. There are many sources through which Defendants could have disclosed the Battery Defect, including, but not limited to, (1) point of sale communications; (2) the owner's manual; and/or (3) direct communications to Class members through means such as state vehicle registry lists and e-mail notifications. Defendants made no such disclosures.

**How:** Defendants concealed and omitted the Battery Defect from Plaintiff and Class members and made misrepresentations about the safety, reliability, durability, performance, and long range of the Class Vehicles, including as described herein. Defendants actively concealed and omitted the truth about the existence, scope, and nature of the Battery Defect from Plaintiff and Class members at all times,

even though Defendants knew about the Battery Defect and knew that information about the Battery Defect would be important to a reasonable consumer, and Defendants promised in its marketing materials that Class Vehicles have qualities that they do not have.

**Why:** Defendants actively concealed and omitted material information about the Battery Defect in the Class Vehicles for the purpose of inducing Plaintiff and Class members to buy and/or lease Class Vehicles, rather than buying or leasing competitors' vehicles, and made representations about the safety, reliability, durability, performance, and long range of the Class Vehicles. Had Defendants disclosed the truth, for example, in their advertisements or other materials or communications, Plaintiff and Class members (indeed, all reasonable consumers) would have been aware of it and would not have bought or leased the Class Vehicles or would not have paid as much for them.

## G.    PLAINTIFF'S EXPERIENCE

69.    Plaintiff bought a 2019 Audi e-tron quattro in August 2020 from Audi North Atlanta, an authorized Audi dealership in Roswell, Georgia.

70.    Before buying the 2019 Audi e-tron quattro, Plaintiff researched and reviewed the representations and promotional materials about the Audi e-tron quattro on the Internet, including the Audi website, regarding the Audi e-tron quattro's advertised features, including battery, range, performance, and safety,

among other things. Plaintiff also reviewed to Monroney label (window sticker) before buying the car, and also spoke with the salesperson about the battery. Defendants never disclosed the Battery Defect to Plaintiff in any of its representations or promotional materials. Moreover, the salesperson and the dealership never disclosed the Battery Defect to him, either because Defendants withheld the Battery Defect from the dealership or did not authorize it to disclose the Battery Defect. Defendants' authorized dealerships and the personnel who worked at those dealerships, including those who interacted with Plaintiff, acted as Defendants' agents in that they failed to disclose information regarding the Battery Defect at Defendants' direction or based upon Defendants' control of the information they provided to them and permitted them to disclose regarding the batteries of Class Vehicles.

71.   If Plaintiff had known about the Battery Defect before buying the Audi e-tron quattro, Plaintiff would not have bought it or would have paid less for it.

72.   Plaintiff's vehicles is subject to the 93U9 recall. The notice for the 93U9 recall states that "This notice is sent to you in accordance with the National Traffic and Motor Vehicle Safety Act. Audi has decided that a defect, which relates to motor vehicle safety, exists in certain 2019-2022 model Audi vehicles. Our records show that you are the owner of a vehicle affected by this action." The notice further states that "A potentially critical self-discharge condition exists in certain

high-voltage battery modules that, in some instances, may lead to thermal overload, possibly resulting in smoke or a fire. A high-voltage battery overheating increases the risk of a fire."

73.    The 93U9 recall notice also states in part, "**A recall remedy is not yet available** . . . We expect to have the remedy available in the first quarter of 2025 . . . **As a precaution, Audi recommends you also set the maximum battery charge to 80%**." (emphasis in original).

74.    The dealership where Plaintiff bought his Audi e-tron told him there is no remedy for the Battery Defect.

## H.    TOLLING OF THE STATUTES OF LIMITATIONS

75.    **Discovery Rule.** Plaintiff's and Class members' claims accrued upon discovery of the Battery Defect in their Class Vehicles that created the risk of an electrical fire. While Defendants knew, and concealed, the facts that the Class Vehicles have the Battery Defect that creates a significant risk of electrical fire, Plaintiff and Class members could not and did not discover these facts sooner through reasonable diligent investigation.

76.    **Active Concealment Tolling**. Any statutes of limitations are tolled by Defendants' knowing and active concealment of the Battery Defect in the Class Vehicles, as described above. Defendants kept Plaintiff and all Class members ignorant of vital information essential to the pursuit of their claim, without any fault

or lack of diligence on the part of Plaintiff. The details of Defendants' efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and Class members, and await discovery. Plaintiff could not reasonably have discovered the Battery Defect in their Class Vehicles. Because Defendants actively concealed, and continued to actively conceal, the Battery Defect in the Class Vehicles, they are estopped from relying on any statute of limitations defense and/or all statutes of limitations for the claims of Plaintiff and the putative Class members have been tolled.

77.  **Estoppel**. Defendants were and are under a continuous duty to disclose to Plaintiff and all Class members the true character, quality, and nature of the Battery Defect in the Class Vehicles. At all relevant times, and continuing to this day, Defendants knowingly, affirmatively, and actively concealed the true character, quality, and nature of the Battery Defect in the Class Vehicles. The details of Defendants' efforts to conceal the above-described unlawful conduct are in their possession, custody, and control, to the exclusion of Plaintiff and Class members, and await discovery. Plaintiff reasonably relied upon Defendants' active concealment.  Based on the foregoing, Defendants are estopped from relying upon any statutes of limitation in defense of this action.

78.  **Equitable Tolling**. Defendants took active steps to conceal the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed,

distributed, sold, and leased Class Vehicles with the Battery Defect. The details of Defendants' efforts to conceal the above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and Class members, and await discovery. When Plaintiff learned about this material information, he exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing his claims. Should such tolling be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

## CLASS ACTION ALLEGATIONS

79.    Pursuant to Rule 23(a), (b)(2), and/or (b)(3), and/or (c)(4) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself, and a Class defined as follows: All persons in the state of Georgia who own, owned, lease and/or leased a Class Vehicle as of January 3, 2024 ("Class").

80.    Excluded from the proposed Class are Defendants; any affiliate, parent, or subsidiary of Defendants; any entities in which Defendant has a controlling interest; any officer, director, or employee of Defendants; any successor or assign of Defendants; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse; members of the judge's staff or the judge's family; any individuals who have personal injury claims resulting from the Battery Defect and alleged misconduct; and anyone who purchased a Class Vehicle for the purpose of resale.

81.    Plaintiff reserves the right to revise the class definition after having an opportunity to conduct discovery and further investigation.

82.    Members of the proposed Class are readily ascertainable because the class definition is based upon objective criteria.

83.    **Numerosity**. Defendants have sold many thousands of Class Vehicles throughout the United States. Members of the proposed Class likely number in the thousands and are thus too numerous to practically join in a single action. Class members may be notified of the pendency of this action by mail, supplemented by published notice (if deemed necessary or appropriate by the Court).

84.    **Commonality and Predominance**. Common questions of law and fact exist as to all proposed Class members and predominate over questions affecting only individual class members. These common questions include, but are not limited to:

    a.    Whether Defendants sold the Class Vehicles with the Battery Defect;

    b.    Whether Defendants knew about the Battery Defect in the Class Vehicles when placing them in the U.S. stream of commerce;

c.    When Defendants became aware of the Battery Defect in the Class Vehicles;

d.    Whether Defendants had a duty to disclose the Battery Defect in the Class Vehicles;

e.    Whether Plaintiff and Class members overpaid for the Class Vehicles due to the Battery Defect;

f.    Whether Defendants are liable to Plaintiff and Class members for fraudulent concealment and omissions;

g.    Whether Defendants are liable to Plaintiff and Class members for negligent misrepresentation and omissions; and

h.    Whether Defendants are liable to Plaintiff and Class members for breach of the implied warranty of merchantability.

85.    **Typicality**. Plaintiff's claims are typical of the claims of the proposed class(es). Plaintiff and the members of the proposed Class all purchased or leased the Class Vehicles with the Battery Defect that are at risk for an electrical fire, giving rise to substantially the same claims. As illustrated by consumer complaints, some of which have been excerpted above, each Class Vehicle included in the proposed class definition suffers from the Battery Defect that Plaintiff complains about.

86.    **Adequacy**. Plaintiff is an adequate representative of the proposed Class because his interests do not conflict with the interests of the members of the Class they seek to represent. Plaintiff has retained counsel who are competent and experienced in complex class action litigation and will prosecute this action vigorously on Class members' behalf.

87.    **Superiority**. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible. Even if Class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from the Battery Defect, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

88.    In the alternative, the proposed Class may be certified because:

a.      the prosecution of separate actions by the individual members of the proposed class(es) would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendants;

b.      the prosecution of individual actions could result in adjudications, which as a practical matter, would be dispositive of the interests of non-party class members or which would substantially impair their ability to protect their interests; and

c.      Defendants have acted or refused to act on grounds generally applicable to the proposed Class, thereby making appropriate final and injunctive relief with respect to the members of the proposed Class as a whole.

CAUSES OF ACTION

COUNT I – FRAUDULENT CONCEALMENT AND OMISSION

89.    Plaintiff hereby realleges and incorporates by reference, as though fully set forth herein, the allegation contained in Paragraphs 1 through 78.

90.    Plaintiff's claim for fraudulent concealment and omission arises from Defendants' affirmative representations about the safety, reliability, durability, performance, long range, and quality of the Class Vehicles, and simultaneous concealment and omission of the Battery Defect, as more specifically outlined below and described more fully throughout this Complaint.

91.    **What and When.** In its advertisements and other marketing materials about the Class Vehicles, public statements about the Class Vehicles, representations about the Class Vehicles during the purchase or leasing process, and representations at the point of sale (including warranties), Defendants made representations about the safety, reliability, durability, performance, long range, and  quality, and other attributes of the Class Vehicles and the batteries in those vehicles to Plaintiff and the Class members.

92.    In these advertisements and other marketing materials about the Class Vehicles, public statements about the Class Vehicles, representations about the Class Vehicles during the purchase or leasing process, representations at the point of sale (including warranties), and in all other communications made to the public, Plaintiff, and putative Class Members regarding the Class vehicles, Defendants actively concealed and omitted mention of material information about the Battery Defect to Plaintiff and the Class members.

93.    Defendants were aware of the Battery Defect, the safety risks posed by the Battery Defect, actual fire incidents that had already occurred as a result of the Battery Defect, and the affect the Battery Defect would have on the value and safety of Class Vehicles, yet it actively concealed and failed to disclose that information to Plaintiff and members of the putative Class.

94.    Defendants had a duty to disclose to Plaintiff and members of the putative Class information about the Battery Defect, which posed a serious safety risk to them and their property, which Defendants had superior knowledge regarding, and which related to intrinsic qualities of the Class Vehicles (namely, the batteries of these electrical vehicles) and which could not have been discovered by the exercise of ordinary prudence and caution.

95.    Defendants' omission of, failure to disclose, and active concealment of material information about the Battery Defect was uniform with respect to Plaintiff and the members of the putative Class, and the information Defendants withheld went to the central aspect of the Class Vehicles.

96.    Defendants concealed and omitted this material information regarding the Battery Defect at all times and on an ongoing basis—from at least 2019 and continuing to the present. To this day, Defendants still have not fully disclosed the truth about or the full scope of the Battery Defect in the Class Vehicles. And when consumers brought their vehicles to Audi dealerships (which information was conveyed to Audi) or called Defendants' customer service and warranty departments complaining or inquiring about the Battery Defect, Defendants and their authorized dealerships denied any knowledge about the Battery Defect or of any adequate repair that would correct the Battery Defect.

97. **Who.** Upon information and belief, these knowing misrepresentations and omissions and active concealment occurred as a result of actions by decisionmakers at Defendants whose identities are currently not known to Plaintiff and members of the Class and whose identities could not be discovered by Plaintiff. These decisionmakers also caused all spokespersons authorized to speak on behalf of Defendants (including their customer service and salespersons at Defendants' authorized dealerships and all others who participated in and facilitated the sale of any Class Vehicles to Plaintiff and Class members) to make the misrepresentations and omissions identified above about the Class Vehicles to Plaintiff and members of the proposed Class.

98. **Where:** Defendants concealed and omitted material information regarding the true nature of the Battery Defect in every form of communication they had with (or directed to) Plaintiff and Class members regarding the performance, safety, range, reliability, quality, and other attributes of the Class Vehicles. Information regarding the Battery Defect is not disclosed in any sales documents, displays, advertisements, other public communications, warranties, owner's manuals, or on Defendants' websites. There are many avenues through which Defendants could have disclosed the Battery Defect, including, but not limited to, (1) point-of-sale communications and disclosure documents; (2) the owner's manual for Class Vehicles; and/or (3) direct communications to Class

members through means such as state vehicle registry lists and e-mail notifications. Defendants did not make any disclosure regarding the Battery Defect.

99.     **How:** Defendants concealed and omitted mention of the Battery Defect from Plaintiff and Class members and made representations about the safety, reliability, durability, performance, long range, quality, and other attributes of the Class Vehicles. Defendants actively concealed and omitted the truth about the existence, scope, and nature of the Battery Defect from Plaintiff and Class members at all times, even though Defendants knew about the Battery Defect. Defendants also knew that information about the Battery Defect would be important to any reasonable consumer and that Plaintiff and Class Members would reasonably rely upon its promises in its marketing materials, sales materials, and other statements that Class Vehicles have qualities and attributes that they do not have in which Defendants omitted, concealed, and failed to disclose the Battery Defect. Had Defendants disclosed the Battery Defect, Plaintiff and Class members would have reviewed or learned about the Battery Defect, and they would not have purchased or leased the Class Vehicles, or they would have paid less, and would not have paid a premium.

100. **Why:** Defendants actively concealed and omitted material information about the Battery Defect with the intent to deceive Plaintiff and the

Class members and with the intent to induce Plaintiff and Class members to buy and/or lease Class Vehicles, rather than buying or leasing competitors' vehicles or purchasing Class Vehicles for a lower price. Had Defendants disclosed the truth, for example, in their advertisements or other materials or communications, Plaintiff and Class members (all reasonable consumers) would have been aware of it and would not have bought or leased the Class Vehicles or would not have paid as much for them.

101. Defendants actively concealed and suppressed these materials facts about the Battery Defect, in whole or in part, in order to maintain a market for the vehicles, to protect its profits, and to avoid costly recalls that could expose Defendants to liability and harm Defendants' commercial reputation. Defendants did so at the expense of and by creating serious safety risks to Plaintiff the class members.

102. Plaintiff and Class members did, in fact, rely on Defendants' omissions and concealment by purchasing or leasing Class Vehicles at the prices they paid, believing that their vehicles did not have a Battery Defect that would impair the performance, safety, range, reliability, quality, and value of the Class Vehicles.

103. Plaintiff and Class members reasonably and justifiably relied on Defendants' misrepresentations and omissions in deciding to purchase or lease

Class Vehicles. Defendants and their agents were the sole parties to the sales transaction that possessed knowledge about the existence and risk of the Battery Defect in its own vehicles. Any consumer, in making the decision of whether to purchase any Class Vehicle had no choice but to rely on what Defendants communicated to them and to the public about the vehicle's performance, safety, range, reliability, and quality.

104.   Plaintiff and the Class members could not have discovered the truth behind Defendants' misrepresentations and omissions though the exercise of reasonable diligence because a defect *inside* an electric battery is not visible to the consumer and is not detectible by a consumer. Detection of such a defect would require specialized knowledge and skill the average consumer does not have, as well as specialized and costly equipment to which Plaintiff and the Class do not have access. Plaintiff and Class members thus had no way of learning the facts that Defendants concealed or failed to disclose about the Battery Defect in the Class Vehicles.

105.   Moreover, no reasonable consumer would have expected vehicles permissibly sold in the United States would contain a serious safety defect known to the entity that markets those vehicles that poses such a significant risk of harm to person and property.

106.  Defendants' misrepresentations and omissions proximately caused damages to Plaintiff and Class members.

107.  Defendants' misrepresentations and omissions proximately caused Plaintiff and Class members to suffer loss in at least the following ways: out of pocket losses, including but not limited to, overpayment for the Class Vehicles at the point of sale; reduction in the value the Class Vehicle; complete loss of their ability to use the Class Vehicle; loss of the ability to use the Class Vehicle in the way, or to the extent, advertised and promised by Defendants, including but not limited to reduced range and the need for more frequent charging; and being subject to the risk of sudden fire, loss of power, and electrical malfunction while driving.

## COUNT II – NEGLIGENT MISREPRESENTATION/OMISSION

108.  Plaintiff hereby realleges and incorporates by reference, as though fully set forth herein, the allegation contained in Paragraphs 1 through 78.

109.  Plaintiff's claim for negligent misrepresentation arises from Defendants' affirmative representations about the safety, reliability, durability, performance, long range, and quality of the Class Vehicles, and simultaneous negligent or reckless omission of and failure to disclose information regarding the Battery Defect to Plaintiff and Class Members, as more specifically outlined below and described more fully throughout this Complaint.

110.  **What and When.** In its advertisements and other marketing materials about the Class Vehicles, public statements about the Class Vehicles, representations about the Class Vehicles during the purchase or leasing process, and representations at the point of sale (including warranties), Defendants made representations about the safety, reliability, durability, performance, long range, quality, and other attributes of the Class Vehicles to Plaintiff and the Class members.

111.  In these advertisements and other marketing materials about the Class Vehicles, public statements about the Class Vehicles, representations about the Class Vehicles during the purchase or leasing process, and representations at the point of sale (including warranties), Defendants, at the very least, negligently and recklessly omitted and/or failed to disclose material information about the Battery Defect to Plaintiff and the Class members.

112.  Defendants were aware of the Battery Defect, the safety risks posed by the Battery Defect, actual fire incidents that had already occurred as a result of the Battery Defect, and the affect the Battery Defect would have on the value and safety of Class Vehicles, and yet failed to disclose that information to Plaintiff and members of the putative Class.

113.  Defendants had a duty to disclose to Plaintiff and members of the putative Class information about the Battery Defect, which posed a serious safety

risk to them and their property, which Defendants had superior knowledge regarding, and which related to intrinsic qualities of the Class Vehicles (namely, the batteries of these electrical vehicles) and which could not have been discovered by the exercise of ordinary prudence and caution.

114.   Defendants' omission of failure to disclose, and active concealment of material information about the Battery Defect was uniform with respect to Plaintiff and the members of the putative Class, and the information Defendants withheld went to the central aspect of the Class Vehicles.

115.   Defendants, at the very least, negligently and recklessly omitted material information regarding the Battery Defect at all times and on an ongoing basis—from at least 2019 and continuing to the present. To this day, Defendants still have not fully disclosed the truth about or the full scope of the Battery Defect in the Class Vehicles. And when consumers brought their vehicles to Audi dealerships or called Defendants' customer service and warranty departments complaining or inquiring about the Battery Defect, Defendants' authorized dealerships (acting as agents for Defendants and conveying information only as directed by Defendants) have negligently or recklessly denied any knowledge of the Battery Defect or of any adequate repair that would correct the Battery Defect.

116.   **Who.** These negligent or reckless misrepresentations and omissions were made by Defendants as a result of actions by decisionmakers at Defendants

whose identities are currently not known to Plaintiff and members of the Class and whose identities could not be discovered by Plaintiff. These decisionmakers also caused all spokespersons authorized to speak on behalf of Defendants (including their customer service and salespersons at Defendants' authorized dealerships and all others who participated in and facilitated the sale of any Class Vehicles to Plaintiff and Class members) to make the misrepresentations and omissions identified above about the Class Vehicles to Plaintiff and members of the putative Class.

117. **Where:** Defendants negligently or recklessly omitted material information regarding the true nature of the Battery Defect in all communications it had with (or directed to) Plaintiff and Class members about the safety, reliability, durability, performance, long range, quality, and other attributes of the Class Vehicles. Information about the Battery Defect is not sufficiently disclosed in any sales documents, displays, advertisements, other public communications, warranties, owner's manuals, or on Defendants' websites. There are many avenues through which Defendants could have disclosed the Battery Defect, including, but not limited to, (1) point-of-sale communications and disclosure documents; (2) the owner's manual for Class Vehicles; and/or (3) direct communications to Class members through means such as state vehicle registry

lists and e-mail notifications. Defendants did not avail themselves of these means of communications.

118.  **How:** Defendants negligently or recklessly omitted from information about the Battery Defect from statements to Plaintiff and Class members and made representations about the safety, reliability, durability, performance, long range, quality, and other attributes of the Class Vehicles that, without disclosure of the Battery Defect, were actively misleading. Defendants omitted the truth about the existence, scope, and nature of the Battery Defect from Plaintiff and Class members at all times, even though Defendants knew about the Battery Defect and knew, or reasonably should have known, that information about the Battery Defect would be important to any reasonable consume. Defendants also knew that complete and accurate information about the battery, including the existence and scope of the Battery Defect, would be important to any reasonable consumer and that Plaintiff and Class Members would reasonably rely upon its promises in its marketing materials, sales materials, and other statements that Class Vehicles have qualities and attributes that they do not have in which Defendants omitted, concealed, and failed to disclose the Battery Defect.

119.  **Why:** Defendants negligently or recklessly failed to disclose material information about the Battery Defect to induce Plaintiff and Class members to buy to buy and/or lease Class Vehicles, rather than buying or leasing

competitors' vehicles or purchasing Class Vehicles for a lower price. Had Defendants disclosed the truth, for example, in their advertisements or other materials or communications, Plaintiff and Class members (all reasonable consumers) would have been aware of it and would not have bought or leased the Class Vehicles or would not have paid as much for them.

120.   Defendants negligently or recklessly failed to disclose these material facts about the Battery Defect, in whole or in part, in order to maintain a market for the vehicles, to protect its profits, and to avoid costly recalls that could expose Defendants to liability and harm Defendants' commercial reputation. Defendants did so at the expense of and by creating serious risks to the safety of Plaintiff the class members.

121.   Plaintiff and Class members did, in fact, rely on Defendants' inadequate disclosures by purchasing or leasing Class Vehicles, at the prices they paid, believing that their vehicles would not have a Battery Defect that would impair the safety, reliability, durability, performance, long range, quality, and value of their Class Vehicles.

122.   Plaintiff and Class members reasonably and justifiably relied on Defendants' negligent or reckless misrepresentations and omissions in deciding to purchase or lease Class Vehicles. Defendants and their agents were the sole parties to the sales transaction that possessed knowledge about the existence and

risk of the Battery Defect in its own vehicles. Any consumer, in making the decision of whether to purchase any Class Vehicle had no choice but to rely on what Defendants communicated to them and to the public about the vehicle's performance, safety, range, reliability, and quality.

123.    Plaintiff and the Class members could not have discovered the truth behind Defendants' misrepresentations and omissions though the exercise of reasonable diligence because a defect *inside* an electric battery is not visible to the consumer and is not detectible by a consumer. Detection of such a defect would require specialized knowledge and skill the average consumer does not have, as well as specialized and costly equipment to which Plaintiff and the Class do not have access. Plaintiff and Class members thus had no way of learning the facts that Defendants concealed or failed to disclose about the Battery Defect in the Class Vehicles.

124.    Moreover, no reasonable consumer would have expected vehicles permissibly sold in the United States would contain a serious safety defect known to the entity that markets those vehicles that poses such a significant risk of harm to person and property.

125.    Defendants' negligent or reckless misrepresentations and omissions proximately caused damages to Plaintiff and Class members.

126.  Defendants' misrepresentations and omissions proximately caused Plaintiff and class members to suffer loss in at least the following ways: complete loss of their ability to use the Class Vehicle; loss of the ability to use the Class Vehicle in the way, or to the extent, advertised and promised by Defendants; reduction in the value the Class Vehicle; and being subject to the risk of sudden fire, loss of power, and electrical malfunction while driving.

## COUNT III - BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

127. Plaintiff hereby realleges and incorporates by reference, as though fully set forth herein, the allegation contained in Paragraphs 1 through 78.

128. Defendants breached their implied warranty of merchantability by failing to provide merchantable goods. Plaintiff and the Class Members have suffered damages as a result of Defendants' breach of this warranty.

129. The Class Vehicles are "goods," Defendants are each considered a "merchant," "seller," and "lessor" of the Class Vehicles, and Plaintiff and Class Members who purchased and leased the Class Vehicles are "buyers" and "lessees."

130.  The Class Vehicles were not merchantable, and as such Defendants breached the implied warranty of merchantability, because at the time of sale and all times thereafter:

  a. The Class Vehicles would not pass without objection in the automotive trade because of the Battery Defect;

b.  The Battery Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.  The Class Vehicles and the batteries therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Battery Defect; and

d.  The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

131.  Plaintiff and other Class Members timely provided Defendants notice of the Battery Defect in their Class Vehicles—and Defendants were on notice of the Battery Defect since at least February of 2020—and Defendants had an opportunity to cure the Battery Defect that they failed to cure.

132.  In the alternative, notice and an opportunity to cure has been waived as a result of Defendants' active concealment of the Battery Defect, its superior knowledge of the Battery Defect, and its failure despite that knowledge to take adequate action to address the Battery Defect.

133.  Plaintiff and Class Members have had sufficient direct dealings with either Defendants or their agents to establish privity of contract.

134.   Plaintiff and members of the Class are in privity with Defendants with respect to the Class Vehicles by reason of warranties Defendants agreed to with respect to the Class Vehicles.

135. Privity was also established when Defendants made direct representations to Plaintiff and Class Members regarding the safety of Class Vehicles and extended an express warranty to Plaintiff and Class Members, who were end users of the Class Vehicles.

136.   Alternatively, privity is not required because Plaintiff and Class Members are intended third-party beneficiaries of contracts between Defendants and its agents and dealerships, and specifically, of the implied warranties.

137.   Alternatively, privity is not required because the Class Vehicles are dangerous instrumentalities due to the Battery Defect.

138.   Defendants knew that the Class Vehicles were defective and posed safety risks, and that the Class Vehicles would continue to pose safety risks after the warranties purportedly expired. Defendants failed to disclose the defect to Plaintiffs and other Class members. Therefore, Defendants' enforcement of any durational limitations on warranties is inequitable and unlawful.

139.   Any attempt by Defendants to limit or disclaim the implied warranty in a manner that would exclude coverage of the Battery Defect is unconscionable as a matter of law because the relevant purchase transactions were tainted by

Defendants' concealment of material facts. Defendants knew at the time of sale that the Battery Defect existed and that the warranty may expire before a reasonable consumer would notice or observe the defect. Thus, any such effort by Defendants to disclaim, or otherwise limit, its liability for the Battery Defect would be inequitable, ineffective, and unlawful.

140.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Class Members received goods that are unreasonably dangerous and have substantially impaired value, and they have suffered incidental, consequential, and other damages, including out-of-pocket costs associated with returning their Class Vehicle to a safe condition, the costs of needed present and future repairs, an inability to use the Class Vehicles for their intended purpose, and diminution of resale value, in an amount to be determine at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that this Court enter judgment against Defendants and in favor of Plaintiff and the Class, and award the following relief:

A.    An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff as the

representatives of the Class, and Plaintiff's counsel as counsel for the Class;

B.    Injunctive and equitable relief in the form of a comprehensive program to adequately repair or replace the batteries in all Class Vehicles, and/or buyback all Class Vehicles, and to fully reimburse and make whole all members of the Class for all costs and economic losses;

C.    Any other appropriate injunctive and equitable relief;

D.    An order awarding compensatory damages for economic loss, overpayment, and out-of-pocket costs in an amount to be determined at trial;

E.    An order awarding restitution, disgorgement, punitive damages, treble damages, and exemplary damages, as permitted under applicable law;

F.    An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded, as required by applicable law;

G.    An award of costs, expenses and attorneys' fees as permitted by law; and

H.    Such other or further relief as the Court may deem appropriate, just, and equitable.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial

by jury of any and all issues in this action so triable of right.

Respectfully submitted this 7th day of January, 2025.

> */s/ T. Brandon Waddell*
> Michael A. Caplan
> Georgia Bar No. 601039
> T. Brandon Waddell
> Georgia Bar No. 252639
> Ashley C. Brown
> **CAPLAN COBB LLC**
> 75 Fourteenth Street NE, Suite 2700
> Atlanta, Georgia 30309
> Tel: (404) 596-5600
> Fax: (404) 596-5604
> mcaplan@caplancobb.com
> bwaddell@caplancobb.com
> abrown@caplancobb.com
>
>
> Rosemary M. Rivas
> (*Pro hac vice* forthcoming)
> David Stein
> (*Pro hac vice* forthcoming)
> Rosanne L. Mah
> (*Pro hac vice* forthcoming)
> GIBBS LAW GROUP LLP
> 1111 Broadway, Suite 2100
> Oakland, California 94607
> Telephone: (510) 350-9700
> Facsimile: (510) 350-9701
> rmr@classlawgroup.com
> ds@classlawgroup.com
> rlm@classlawgroup.com