**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION**

| | | |
|---|---|---|
| DWIGHT KELLY and MARCUS HORTON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC.,<br><br>Defendant. | * * * * * * * * * * * * * | 1:25-CV-00071-ELR |

## ORDER

Presently before the Court is the Motion to Dismiss by Defendant Volkswagen Group of America, Inc. [Doc. 29].[1] The motion is fully briefed and ripe for review.

## I. Background[2]

On January 7, 2025, Plaintiff Dwight Kelly filed this putative class action against Volkswagen Group of America, Inc. ("Volkswagen"), alleging a defect in the high-voltage lithium-ion batteries equipped in certain model year 2019–2024

[1] All citations are to the electronic docket and the page numbers referenced are those imprinted by the Court's docketing software, unless otherwise noted.

[2] For purposes of the present motion, the Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).

Audi e-tron SUV electric vehicles ("Class Vehicles."). Compl. [Doc. 1]. Volkswagen markets and sells the Class Vehicles. Id. ¶ 12. The March 7, 2026 Amended Complaint, [Doc. 18], added an additional Plaintiff, Marcus Horton. Plaintiffs generally allege that Volkswagen failed to disclose or adequately repair an alleged defect affecting the high-voltage lithium batteries in the Class Vehicles ("Battery Defect"). See Am. Compl. [Doc. 18]. Plaintiffs seek to represent nationwide and Georgia-state specific classes of consumers who purchased or leased the Class Vehicles. Id. ¶¶ 86–87.

**A. Volkswagen's Advertisements and the Battery Defect**

Plaintiffs allege that Volkswagen made misrepresentations about the quality and functionality of high voltage lithium-ion batteries in its e-tron SUVs and did not disclose the Battery Defect to its consumers. Am. Compl. ¶¶ 16–23, 66–69. Specifically, Volkswagen advertised that the e-tron SUV's 95-kWh lithium-ion battery would provide an EPA-estimated range of 204 miles and incorporated "[s]ophisticated measures" designed to protect the battery against damage from impacts. Id. ¶ 19. Volkswagen represented that the e-tron was designed for "fast charging capability" and able to "deliver up-to an 80 percent charge in only 30 minutes" (approximately) at select high-speed charging stations. Id. ¶¶ 19–20. Furthermore, Volkswagen represented to consumers that the batteries went through

"[r]igorous battery testing" and "allow[ed] for quick DC charging capabilities and consistent vehicle performance" in the e-tron. Id. ¶ 33.

The Class Vehicles' batteries are lithium-ion, which allows them to store a lot of energy in a small mass and have a long cycle life. Am. Compl. ¶ 26. However, because they can store significant amounts of energy, they are also more susceptible to overheating and causing a phenomenon called "thermal runaway" where the battery's temperature rapidly and uncontrollably rises and leads to a fire. Id. ¶ 27. The overheating may result from a short circuit in a battery cell within the battery module. Id. ¶ 27. Plaintiffs allege that the Class Vehicles' batteries are particularly prone to this problem because they use high-voltage technology versus standard technology and that the Battery Defect causes a short circuit in the battery module, which increases the risk of a fire or other thermal event. Id. ¶¶ 27–28. The Battery Defect also limits the advertised range, increases the need for frequent charging, makes the Class Vehicles prone to loss of power, and causes electrical malfunction while driving. Id. ¶¶ 2, 115.

**B. Volkswagen's Knowledge of the Battery Defect and Its Recalls**

Plaintiffs allege that Volkswagen knew of the Battery Defect in the Class Vehicles since at least April 2020, but it failed to disclose the Defect and instead continued to market the e-tron SUV as safe and reliable. Am. Compl. ¶¶ 1–2, 65.

Plaintiffs relied on Volkswagen's omissions and representations when purchasing their vehicles. Am. Compl. ¶¶ 68–69, 157.

According to Plaintiffs, Volkswagen became aware of the Battery Defect through a number of sources, including: (1) Volkswagen's pre-sale durability testing on its vehicles and components; (2) public reports of battery issues with Class Vehicles, including fires and thermal events; (3) consumer complaints to the National Highway Traffic Safety Administration (NHTSA) and to Volkswagen; (4) reports of battery defects and lawsuits involving both Porsche Taycan and Chevrolet Bolt electric vehicles, which share the same battery supplier as Audi's e-tron SUVs; (5) warranty claims, dealership repair records, and part sales by Volkswagen; (6) Volkswagen's attempts to fix the Defect and its Defect-related safety recalls and technical service bulletins. Am. Compl. ¶¶ 29–37, 40–63, 66–69. Plaintiffs allege that the Battery Defect is the type of defect that Volkswagen's pre-sale durability testing would reveal because the Battery Defect is a manufacturing defect present in the vehicles before they leave the plant and are ever driven. Id. ¶ 35. The "rigorous battery testing" included an assessment of performance in extreme heat and cold temperatures. Id. ¶¶ 33–34.

Several Class Vehicle customers complained to the NHTSA and in online posts that they observed fumes and flames coming out of their vehicles, received "electrical system error" messages on the dashboard display, and experienced

sudden and complete loss of all vehicle power, charging failures, and an inability to restart. Am. Compl. ¶¶ 29, 37, 40. In April 2020, according to a letter to the NHTSA, Volkswagen learned of a claim outside the United States that a Class Vehicle's high-voltage battery pack caused a fire. Id. ¶ 40. In June 2020, Volkswagen opened an investigation to determine the root cause of the fire. Id. From mid-2020 to mid-2023, Volkswagen reportedly learned of other thermal events involving Class Vehicles. Id. ¶¶ 41–43. Plaintiffs further allege that Volkswagen should have known about the Battery Defect based on reports of a similar battery defect affecting Porsche Taycan vehicles as early as February 2020. Id. ¶¶ 44–48.

Volkswagen initiated several recalls related to the risk of the e-tron SUV batteries experiencing short circuits within the battery modules. Am. Compl. ¶¶ 52–63. Volkswagen first began recalls of certain e-tron SUVs in June 2019 due to a defect involving the battery cells that could lead to a short circuit and spark a fire. Id. ¶ 53. Volkswagen announced further recalls on December 28, 2023, and March 15, 2024, with a later expanded recall on September 29, 2024, for certain other e-tron vehicles. Id. ¶¶ 54–58. Plaintiffs allege that the recalls neither guaranteed a replacement or repair of battery modules nor offered to replace the defective batteries. Id. ¶ 61. Instead, Volkswagen advised e-tron SUV owners to limit charging the lithium-ion battery to a maximum 80% before Volkswagen

deployed a diagnostic software update in the first quarter of 2025.[3] Id. ¶¶ 3–4, 61. Plaintiffs predict that the expected software update will reduce the Class Vehicles' advertised range, causing owners to charge their Class Vehicles more frequently. Id. ¶¶ 61. They maintain that the recalls do not adequately address the Battery Defect and that with the Defect unaddressed, all Class Vehicle owners are at risk of losing power while driving or experiencing a vehicle fire. Id. ¶ 6.

### C. Parties to the Litigation

Volkswagen is a Delaware corporation with its headquarters and principal place of business in Virginia. Am. Compl. ¶ 12. It is the parent company of Audi of America, LLC ("Audi") and markets and sells Audi vehicles in the United States. Id.

Plaintiffs are two individual consumers who are both residents of Georgia. Am. Compl. ¶¶ 10–11. Kelly bought a used 2019 Audi e-tron quattro SUV in August 2020 and Horton bought a new 2023 Audi RS e-tron GT SUV in February 2023 from Audi North Atlanta, an authorized Audi dealership in Roswell, Georgia. Id. ¶¶ 10, 12, 70. Both Plaintiffs bought their respective vehicles from Audi-authorized dealerships in Georgia. Id. ¶¶ 12. Before buying their vehicles, both Plaintiffs researched and reviewed Volkswagen's representations and promotional

[3] At the time that Plaintiffs responded to Volkswagen's Motion to Dismiss, i.e., as of May 30, 2025, Volkswagen had not yet made the software update available. [Doc. 30 at 16].

materials, including materials on Audi's website, concerning each of their vehicle's advertised features. Id. ¶¶ 71, 77. Both also reviewed the Monroney label (the vehicle's window sticker) before their purchases. Id. At the time of sale, Volkswagen provided to each Plaintiff "a new vehicle warranty" ("Warranty") covering the Class Vehicles' high-voltage batteries and battery modules for a period of eight years or 100,000 miles, whichever came first. Id. ¶ 176.

However, neither Volkswagen nor their respective dealerships disclosed the Battery Defect to Plaintiffs. Am. Compl. ¶¶ 71, 77. Had Plaintiffs known about the Battery Defect ahead of the sale, they would not have bought their vehicles or would have paid less for them. Id. ¶¶ 72, 78. Both Plaintiffs' vehicles are subject to the recall that asks vehicle owners to limit charging their vehicle batteries to a maximum of 80% capacity and await Volkswagen's remedial software update. Id. ¶¶ 73, 79. On February 22, 2025, Horton received an electrical error message on his vehicle's dashboard warning him that the vehicle should be parked in a safe place. Id. ¶ 80. Although Horton had the vehicle towed to an Audi dealership, the dealership returned the vehicle to him without providing a remedy. Id.

## II. Procedural History

Plaintiffs seek to ultimately certify a putative class of persons who purchased or leased a Class Vehicle with the alleged Battery Defect, and they request injunctive relief requiring repair, replacement, or buyback of the Class Vehicles, monetary

damages, and their attorneys' fees and costs. Am. Compl. at 80–81. Plaintiffs assert the following claims against Volkswagen, individually, and on behalf of their proposed Class: (1) fraudulent concealment and omission; (2) negligent misrepresentation and omission; (3) breach of the implied warranty of merchantability; (4) violation of Georgia Fair Business Practices Act (GFBPA), O.C.G.A. § 10-1-390; and (5) breach of express warranty. Id. ¶¶ 97–192. In turn, Volkswagen moves to dismiss the Amended Complaint, in part, and Plaintiffs oppose the motion.[4] [Docs. 29, 30].

## III. Legal Standard

Pursuant to Rule 12, a defendant may move to dismiss the complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true the complaint's allegations and draw all reasonable inferences in the light most favorable to the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); United States v. Stricker, 524 F. App'x 500, 505 (11th Cir. 2013). Even so, a complaint offering mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678

[4] Volkswagen withdraws its request to dismiss or strike Plaintiffs' nationwide class allegations at this stage. [Doc. 31 at 32]. Accordingly, the Court does not address that argument.

(2009) (quoting Twombly, 550 U.S. at 555); Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007).

Additionally, to survive a Rule 12(b)(6) motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Put differently, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. This so-called "plausibility standard is not akin to a 'probability requirement'"; rather, the plaintiff must allege sufficient facts such that it is reasonable to expect that discovery will lead to evidence supporting the claim. Id.; Twombly, 550 U.S. at 556.

**IV. Discussion**

Volkswagen argues for dismissal on several grounds. [See Doc. 29-1]. First, it contends that Plaintiffs fail to state claims for breach of express and implied warranties. Second, Volkswagen argues that Plaintiffs' fraudulent concealment, negligent misrepresentation, and GFBPA claims fail because Plaintiffs have not adequately alleged actionable misrepresentations, reliance, pre-sale knowledge of the Battery Defect, or a duty to disclose. Third, Volkswagen contends that certain of Kelly's claims are barred by the applicable statutes of limitations. Finally,

Volkswagen argues that Plaintiffs are not entitled to equitable or injunctive relief. The Court takes up each of Volkswagen's arguments in turn below.

**A. Breach of Express Warranty**

1. Manifestation and repair during the warranty period

To state a claim for breach of an express warranty under Georgia law, a plaintiff must plausibly allege that the defect manifested during the warranty period, the product was presented to an authorized dealer for repair, and the defendant failed to repair the defect pursuant to the warranty. McDonald v. Mazda Motors of Am., Inc., 603 S.E.2d 456 (Ga. App. 2004); see Callen v. Daimler AG, 2020 WL 10090879, at *9–11 (N.D. Ga. June 17, 2020). Volkswagen contends that Plaintiffs failed to satisfy these requirements by not pleading sufficient facts to show that the Battery Defect manifested during the warranty period or that Plaintiffs presented it to a dealer for repair while the warranty remained in effect. [Doc. 29-1 at 23–24]. The Warranty for the high-voltage batteries in Plaintiffs' vehicles provides for repairs to correct a defect in "material and workmanship" by an authorized Audi dealer, within the prescribed warranty period of 8 years or 100,000 miles (whichever occurs first) from the vehicle's in-service date. [Doc. 29-3, Ex. A]. As discussed below, the Court concludes that they have plausibly alleged defect manifestation and presentment for repair.

Plaintiffs allege that Volkswagen identified their vehicles as affected by the Battery Defect through recall notices, advised vehicle owners that the defect could result in thermal overload or fire, instructed owners to limit charging to 80% capacity because the final remedy—a diagnostic software update—is not yet available, and acknowledged that a remedy had not yet been developed. Am. Compl. ¶¶ 4, 73, 79. Plaintiffs further allege that Kelly contacted an Audi dealership "to address the Battery Defect" and "sought repair or replacement of his vehicle's battery," while Horton "had his vehicle towed to an Audi dealership" seeking repair, but neither received a repair. Id. ¶¶ 74–75, 80–81. Plaintiffs also allege that their vehicles had been driven fewer than 100,000 miles at the time they sought repair of their vehicles' battery. Id. ¶¶ 75, 81. Accepting these allegations as true and drawing all reasonable inferences in Plaintiffs' favor, the Court concludes that Plaintiffs plausibly allege that the Battery Defect manifested during the warranty period and that Volkswagen failed to repair the defect after Plaintiffs sought repair during that period.

2. Coverage of the alleged Battery Defect

Volkswagen argues that Plaintiffs' express warranty claim fails because the express warranty covers only defects in "material and workmanship" and therefore does not extend to design defects. [Doc. 29-1 at 14]. Plaintiffs do not challenge this contention. [Doc. 30 at 14]. Instead, they argue that the Amended Complaint

sufficiently alleges a manufacturing defect that falls within the scope of the Warranty's language.

Here, Plaintiffs allege that internal short circuiting within a battery cell can occur "due to a manufacturing defect," that the Battery Defect is "a manufacturing defect present in the vehicles before they leave the plant," and that the defect existed at the time of production. Am. Compl. ¶¶ 27, 35, 180. Thus, the Amended Complaint proceeds under the theory that the alleged defect results from the manufacturing process rather than solely from the batteries' intended design.[5]

Volkswagen contends that Plaintiffs necessarily allege a design defect because they assert that the Battery Defect affects every Class Vehicle. [Doc. 29-1 at 14–15]. The Court disagrees. Although courts have recognized that manufacturing defects often involve a deviation from the intended design of a particular product, the fact that an alleged defect is present throughout an entire product line does not automatically transform a manufacturing defect into a design defect. See McClure v. Toyota Motor Corp., 759 F. Supp. 3d 1333, 1348 (N.D. Ga. 2024) ("That Plaintiff alleges that the [d]effect *uniformly* affects the [vehicles] does not preclude the possibility that it was created by a manufacturing error."); see also Callen,

[5] Plaintiffs also argue that they may plead alternative theories of liability. [Doc. 30 at 23 citing McClure v. Toyota Motor Corp., 759 F. Supp. 3d 1333, 1347 (N.D. Ga. 2024) (holding that plaintiffs may plead design and manufacturing defects in the alternative)]. However, Plaintiffs do not point to an allegation in the Amended Complaint that the Battery Defect results from a design defect. Accordingly, the Court does not construe the Amended Complaint as pleading a design-defect theory in the alternative.

2020 WL 100908799, at *7 (finding that the plaintiffs had plausibly pled a defect in "materials or workmanship" where they alleged that "the same UV protectant issue . . . affect[ed] every [c]lass [v]ehicle in the product line."). Accordingly, Plaintiffs plausibly allege that the Battery Defect constitutes a manufacturing defect covered by the Warranty. The Court therefore declines to dismiss Plaintiffs' express warranty claim on the ground that it alleges a design defect, which the Warranty does not cover.

**B. Breach of Implied Warranty of Merchantability**

Volkswagen argues that Plaintiffs fail to state a claim for a breach of the implied warranty of merchantability because they do not allege that the Battery Defect rendered the Class Vehicles undrivable or otherwise unfit for their ordinary purpose of providing transportation. [Doc. 29-1 at 26–28]. The Court disagrees.

Georgia law provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." O.C.G.A. § 11-2-314. To be merchantable, the goods "must be at least . . . fit for the ordinary purposes for which such goods are used." Id. § 11-2-314(2)(c). "The ordinary purpose of a vehicle is to provide safe and reliable transportation." Bolling v. Mercedes-Benz USA, LLC, No. 23-CV-671, 2024 WL 3972987, at *12 (N.D. Ga. Aug. 27, 2024). At the motion to dismiss stage, the issue is not whether Plaintiffs have established that their vehicles are

unmerchantable, but whether they have plausibly alleged a defect affecting the safety, drivability, or usefulness of the Class Vehicles. McClure, 759 F. Supp. 3d at 1350–51; Amin v. Mercedes-Benz USA, LLC, 301 F. Supp. 3d 1277, 1288 (N.D. Ga. Mar. 13, 2018) (allegations of mold in air-conditioning systems that presented a risk of illness were enough to plausibly allege a defect that affects a vehicle's drivability, safety, and usefulness).

Plaintiffs allege that the Battery Defect presents a risk of sudden loss of power while driving and of thermal events, including fires. Am. Compl. ¶¶ 2, 27–28. Further, Volkswagen allegedly issued recalls and instructed owners to limit charging to 80% capacity pending availability of a software update, and advised them that the eventual software update would reduce the vehicles' advertised range. Id. ¶¶ 3–7, 52–61, 115. These allegations sufficiently show that the vehicles are not fit for their ordinary purpose because the alleged risk of sudden loss of power and thermal events directly affects the vehicles' safety and drivability and therefore their fitness for ordinary transportation. Moreover, the alleged 80% charging limitation and eventual reduction in range further diminish the vehicles' usefulness for that purpose.

Volkswagen's reliance on Hines v. Mercedes-Benz USA, LLC, 358 F. Supp. 2d 1222, 1233 (N.D. Ga. 2005) is misplaced. There, the court granted summary judgment after considering a fully developed evidentiary record, including service records, expert inspections, and deposition testimony demonstrating that the

manufacturer had successfully repaired the alleged defects and that the vehicle remained fit for ordinary use. Hines, 358 F. Supp. 2d at 1232–33. By contrast, this case is before the Court on a Rule 12(b)(6) motion to dismiss, where the Court must accept Plaintiffs' well-pleaded factual allegations as true and may not weigh competing evidence regarding the existence of the alleged defect.

Volkswagen also argues that Plaintiffs fail to state a valid implied warranty claim because they did not experience or present any battery-related issue to an authorized dealer during the applicable warranty period. [Doc. 29-1 at 29]. Not so. Unlike the plaintiffs in McCabe v. Daimler AG, 948 F. Supp. 2d 1347, 1361 (N.D. Ga. 2013), where the plaintiffs failed to present their vehicles for repairs within the warranty period, here, Plaintiffs allege that their vehicles are subject to Volkswagen's recalls, meaning that their vehicles' batteries are prone to overheating and thermal events, that they sought repairs from authorized Audi dealerships while their vehicles remained within the Warranty period, and that Volkswagen failed to repair the alleged Battery Defect. Am. Compl. ¶¶ 73–81. Thus, Plaintiffs plausibly allege that their vehicles were affected by the Battery Defect while under warranty. And Plaintiffs also sufficiently allege that the Battery Defect affects the safety, reliability, and usefulness of the Class Vehicles, rendering the Vehicles unfit for the ordinary purposes of providing safe and reliable transportation.

### C. GFBPA Violation, Fraudulent Concealment, and Negligent Misrepresentation

Plaintiffs base their fraudulent concealment (Count I), negligent misrepresentation (Count II), and violations of GFBPA (Count IV) claims on allegations of both affirmative misrepresentations and omissions. Am. Compl. ¶¶ 98, 117, 156–57. Volkswagen argues that (1) Plaintiffs' affirmative misrepresentation claims fail because the Amended Complaint does not identify any actionable affirmative misrepresentation or plausibly allege reliance and (2) Plaintiffs' omission-based theories fail because the Amended Complaint does not adequately allege Volkswagen's knowledge of the Battery Defect or a duty to disclose. [Doc. 29-1 at 18–30]. The Court addresses each argument in turn.

"In a claim for fraudulent concealment, a plaintiff must prove the same five elements of a fraud claim." Amin, 301 F. Supp. 3d at 1296 (cleaned up). Under Georgia law, those elements are: "(1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." Id. (cleaned up).

Negligent misrepresentation claims generally require an affirmative misrepresentation rather than a mere omission and reliance upon that false information. Intellicig U.S. v. CN Creative, Ltd., 2017 U.S. Dist. LEXIS 235128, at *22–*24 n.6 (N.D. Ga. Mar. 6, 2017) (noting that the language courts employ in

"analyzing negligent misrepresentation cases strongly suggest[s] that a negligent misrepresentation claim requires an affirmative representation").

Finally, to state a GFBPA claim, a plaintiff must allege: (1) a violation of the GFBPA; (2) causation; and (3) injury. Tiismann v. Linda Martin Homes Corp., 281 Ga. 137, 139, 637 S.E.2d 14, 17 (2006). Where the alleged GFBPA violation is based on a misrepresentation, the plaintiff must demonstrate that he or she was injured as a result of his or her reliance upon the alleged misrepresentation. Tiismann, 281 Ga. at 138, 637 S.E.2d at 16; Zeeman v. Black, 273 S.E.2d 910, 916 (Ga. App. 1980) (providing that when the alleged violation of the GFBPA is a misrepresentation, the GFBPA "incorporat[es] the 'reliance' element of the common law tort of misrepresentation into the causation element of an individual claim").

1. Affirmative misrepresentations

As an initial matter, Volkswagen argues that Plaintiffs cannot premise their fraudulent concealment claim on affirmative misrepresentations. [Doc. 29-1 at 29]. However, Georgia law recognizes a "false representation or omission of a material fact" as the first element of fraud and requires a plaintiff alleging fraudulent concealment to prove those same elements. Marion A. Allen, Inc. v. Johnston, 903 S.E. 2d 334, 337 (Ga. App. 2024) (analyzing a fraudulent concealment claim based on allegations that the defendants concealed the extent of mold contamination by misrepresenting the results of mold inspections and remediation);

Amin, 301 F. Supp. 3d at 1296. Further, Plaintiffs allege that Volkswagen made affirmative representations about the Class Vehicles while simultaneously concealing and omitting the Battery Defect. Am. Compl. ¶ 98. Accordingly, the Court is not persuaded that Plaintiffs' fraudulent concealment claim fails merely because it incorporates Volkswagen's alleged affirmative misrepresentations.

2. Actionable misrepresentations

Volkswagen argues that Plaintiffs' fraudulent concealment, negligent misrepresentation, and GFBPA claims fail because the Amended Complaint does not identify any actionable false or misleading statements. [Doc. 29-1 at 29–35]. Specifically, Volkswagen contends that Plaintiffs rely on generalized advertising statements and non-actionable puffery. [Id.]. The Court need not decide whether Rule 9(b) applies to each of Plaintiffs' claims because, even assuming that the heightened pleading standard applies, Plaintiffs have adequately alleged actionable affirmative misrepresentations.

Claims sounding in fraud are generally subject to Rule 9(b)'s heightened pleading standard, which requires a plaintiff to allege the "who, what, when, where, and how" of the alleged fraud. Singleton v. Petland Mall of Georgia, LLC, 2020 WL 3400194, at *3 (N.D. Ga. Mar. 18, 2020). Volkswagen principally relies on Singleton, arguing that Plaintiffs fail to identify the content, source, or timing of any actionable statements. [Doc. 29-1 at 31]. In Singleton, however, this Court

dismissed the negligent misrepresentation claim because the complaint failed to allege any representation attributable to the individual defendants, lumped defendants together, and failed to identify who made the alleged statements, when they were made, or how they related to plaintiffs' reliance. 2020 WL 3400194, at *9. Correspondingly, the McClure Court concluded that the plaintiffs satisfied Rule 9(b)'s particularity requirement where the complaint identified the defendant, the challenged statements, the period during which they were made, the media through which they were disseminated, and why they were allegedly false or misleading. 759 F. Supp. 3d at 1354.

Here, as in McClure, the Amended Complaint identifies the content of the challenged representations, attributes those representations to Volkswagen, identifies the media through which they were allegedly made, and explains that the representations were false or misleading because of the existence of the Battery Defect. Am. Compl. ¶¶ 18–23, 33, 65–69, 71, 77. Although some promotional statements may constitute nonactionable puffery, other representations are actionable statements of fact where they concern the reliability and performance of a vehicle's allegedly defective electrical system. McClure, 759 F. Supp. 3d at 1356. Volkswagen's alleged representations concern vehicle reliability and performance. For instance, Plaintiffs allege that Volkswagen "touted the [Class Vehicles'] advanced thermal management system" and incorporated "[s]ophisticated

measures" to protect the high voltage battery. Am. Compl. ¶ 19. Volkswagen also allegedly claimed that the Class Vehicles were "engineered for both AC and DC charging," which supports "a DC fast charging capability of up to 150kW" that "can deliver up-to an 80 percent charge in only approximately 30 minutes." Id. ¶ 20. And Volkswagen further allegedly represented that the Class Vehicles' batteries underwent "rigorous battery testing" using technology that "allows for quick DC charging capabilities and consistent vehicle performance." Id. ¶ 33. The Amended Complaint maintains that these representations were false or misleading because, contrary to Volkswagen's representations regarding the batteries' safety, charging capabilities, testing, and performance, the alleged Battery Defect diminished charging capacity, increased charging frequency, and created risks of sudden power loss and thermal events. Id. ¶¶ 2, 7. These allegations sufficiently identify the "who, what, when, where, and how" of the alleged misrepresentations. See McClure, 759 F. Supp. 3d at 1355–56. Accordingly, even assuming that Rule 9(b) applies, Plaintiffs adequately plead actionable misrepresentations.

Volkswagen also argues that Plaintiffs cannot base their claims on the publication of EPA-estimated driving ranges. [Doc. 29-1 at 33–34]. Although the mere disclosure of EPA estimates generally does not constitute an actionable misrepresentation, representations that go beyond those estimates may be actionable. Hinton v. Jim Thompson Autos, Inc., 2024 WL 2932626, at *9 (N.D. Ga. June 11,

2024). Plaintiffs do not rely solely on the EPA-estimated driving ranges. Rather, they also identify specific representations concerning the Class Vehicles' battery safety, thermal management, charging capability, charging speed, and consistent vehicle performance. Am. Compl. ¶¶ 19–23, 33. Accordingly, Volkswagen's EPA-estimate argument does not warrant dismissal at this stage.

Construing the allegations collectively and in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have plausibly alleged actionable affirmative misrepresentations sufficient to satisfy Rule 9(b)'s heightened pleading standard.

3. Reliance

Volkswagen next argues that Plaintiffs fail to plausibly allege that they relied on any misrepresentation by Volkswagen when buying their vehicles. [Doc. 29-1 at 35]. As discussed above, reliance is a necessary element of Plaintiffs' fraudulent concealment, negligent misrepresentation, and GFBPA claims. See Intellicig, 2017 U.S. Dist. LEXIS 235128, at *22–*24; Amin, 301 F. Supp. 3d at 1296; Zeeman, 273 S.E.2d at 916. And because negligent misrepresentation and fraudulent concealment are subject to Rule 9(b), Plaintiffs must satisfy the Rule's heightened pleading requirement. Singleton, 2020 WL 3400194, at *7; Amin, 301 F. Supp. 3d at 1296. To adequately plead justifiable reliance, a plaintiff must "allege specific facts to support a finding that he acted upon or refrained from acting upon [the

defendant's] actions." Dixon v. Branch Banking & Tr. Co., 824 S.E.2d 760, 766 (Ga. App. 2019). Plaintiffs do so here.

Plaintiffs allege that, before buying their vehicles, they "researched and reviewed" Volkswagen's representations and promotional materials concerning the Class Vehicles. Am. Compl. ¶¶ 71, 77. They further allege that the representations concerned, among other things, the charging speed and capability of their vehicle batteries, that they reviewed these materials on the internet, including on Audi's website, as well as on the vehicles' Monroney label and that they bought their vehicles based on the representations they reviewed. Id. ¶¶ 71–72, 77–78. These allegations are sufficient at the pleading stage to plausibly allege reliance. See McClure, 759 F. Supp. 3d at 1356–57 (finding reliance sufficiently alleged where the plaintiff alleged that he was exposed to the defendant's representations concerning vehicle safety, that those representations were material to his purchase decision, and that he relied on similar advertising concerning the vehicle's quality and dependability); Callen, 2020 WL 10090879, at *18 (finding fraudulent misrepresentation adequately pled because complaint specified "where the plaintiffs saw the[] statements, what the statements contained, and how they affected plaintiffs' purchasing decisions"). Accordingly, Volkswagen's argument that Plaintiffs have failed to plausibly allege reliance is unavailing.

4. Pre-sale knowledge and duty to disclose

Volkswagen next argues that Plaintiffs' fraudulent concealment claim (Count I) and claim for violations of GFBPA (Count IV) fail because Plaintiffs do not plausibly allege that Volkswagen had knowledge of the alleged Battery Defect in the Class Vehicles at the time that Plaintiffs purchased their Class Vehicles. [Doc. 29-1 at 36–43]. Moreover, it contends that the fraudulent concealment claim fails for Plaintiffs' failure to plausibly allege that Volkswagen had a duty to disclose the allegedly omitted information. [Id.].

*a. Pre-sale knowledge*

Plaintiffs' fraudulent concealment and omission-based GFBPA theories depend on Volkswagen's alleged knowledge of the Battery Defect before Plaintiffs bought their vehicles. Plaintiffs maintain that the Amended Complaint alleges several sources of Volkswagen's pre-sale knowledge that, considered together, support a reasonable inference of knowledge. [Doc. 30 at 36–42]. The Court agrees.

Although claims sounding in fraud are subject to Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). In determining whether a plaintiff has plausibly alleged knowledge, the court considers the factual allegations collectively rather than requiring each allegation to independently establish knowledge. See Pinon v. Daimler AG, 2019 WL 11648560, at *24 (N.D. Ga. Nov. 4, 2019) (collecting cases).

First, Plaintiffs allege that Volkswagen conducted extensive pre-sale durability testing of the lithium-ion batteries installed in the Class Vehicles. Am. Compl. ¶ 31. Plaintiffs further allege that Volkswagen represented that the Class Vehicles underwent "[r]igorous battery testing" and that the vehicles were "thoroughly tested to ensure consistent performance and longevity," including testing in extreme hot and cold temperatures. Id. ¶¶ 33–34. According to Plaintiffs, the Battery Defect existed in the Class Vehicles before they left the manufacturing plant and was the type of defect that Volkswagen's pre-sale durability testing would have revealed. Id. ¶ 35. Although these allegations of pre-sale durability testing do not identify the results of any test or independently establish that Volkswagen discovered the Battery Defect through its testing, they may be considered together with Plaintiffs' other factual allegations in determining whether Plaintiffs have plausibly alleged pre-sale knowledge. Bolling, 2024 WL 3972987, at *15–16 (Pre-sale testing supports "the reasonable inference" that would have revealed the existence of the defect and "when this is added" to plaintiffs' other allegations, "it is sufficient to support an inference of knowledge at this stage of the litigation.").

Plaintiffs further allege that according to an April 2020 letter to the NHTSA, approximately four months before Kelly bought his Class Vehicle, Volkswagen learned of a claim that the high-voltage battery pack in a Class Vehicle had caused a fire. Am. Compl. ¶¶ 40, 70. Volkswagen and the battery supplier allegedly opened

an investigation into the incident in June 2020 to determine the root cause of the fire. Id. Thus, before Kelly bought his Vehicle in August 2020, Volkswagen allegedly conducted pre-sale testing of the e-tron SUV's lithium-ion batteries, had notice of a fire potentially caused by the high-voltage battery system at issue here, and had begun investigating its cause.[6] Taken together and drawing reasonable inferences in Plaintiffs' favor, these allegations plausibly support Volkswagen's knowledge of the alleged Battery Defect before Kelly's purchase.

The allegations supporting pre-sale knowledge are more extensive with respect to Horton, who bought his Vehicle in February 2023. Am. Compl. ¶ 76. In addition to Volkswagen's knowledge based on the e-tron SUV battery pack fire and subsequent investigation, Plaintiffs allege that additional thermal events involving the Class Vehicles occurred between 2020 and 2023, prompting Volkswagen to undertake additional investigations, onsite inspections, and root cause analyses. Id. ¶¶ 40–43. These thermal events included fires in the United States in July and

---

[6] Volkswagen asks the Court to consider the NHTSA letter referenced in the Amended Complaint and relies on its statement that the battery module was ultimately "ruled out as the root cause of the thermal event." [Doc. 29-1 at 39 n. 5]. Although the Amended Complaint refers to the letter, the letter is not central to Plaintiffs' claims for purposes of the incorporation-by-reference doctrine because the letter is not "a necessary part of [plaintiffs'] effort to make out a claim." See Kalpakchian v. Bank of Am. Corp., 832 F. App'x 579, 582–83 (11th Cir. 2020) (cleaned up). Nor may the Court take judicial notice of disputed factual assertions in the letter for their truth. See McClure, 759 F. Supp. 3d at 1361–62. Thus, to the extent Volkswagen relies on the letter's statement that the battery module was "ruled out as the root cause of the thermal event" to establish that the Battery Defect did not cause the April 2020 incident, the Court declines to accept that statement as true over the Amended Complaint's allegations. [Doc. 29-1 at 40].

November 2022, before Horton bought his vehicle. Id. ¶ 43. Volkswagen responds that the thermal events are not sufficient in substance, timing, or in number, to constitute pre-sale knowledge of the Battery Defect. [Doc. 31 at 25]. However, Plaintiffs' allegations support a reasonable inference that these incidents, when considered together with Volkswagen's alleged pre-sale battery testing and investigation of the earlier e-tron battery pack fire, are sufficient to support an inference of knowledge at this stage of the litigation.

Plaintiffs also rely on consumer complaints submitted to the NHTSA. Am. Compl. ¶ 29. Because none of the identified complaints predate Kelly's purchase, the complaints do not support an inference of pre-sale knowledge as to Kelly. As to Horton, however, Plaintiffs allege that Volkswagen monitors NHTSA complaints and that, before Horton's purchase, consumers had reported battery-related problems with the Class Vehicles. Am. Compl. ¶¶ 29, 36. Although these complaints may not independently establish Volkswagen's knowledge of the Battery Defect, they bolster the inference of Volkswagen's knowledge regarding pre-sale knowledge of the Defect in Horton's Class Vehicle when considered together with Plaintiffs' other allegations supporting that knowledge. Pinon, 2019 WL 11648560, at *24 (N.D. Ga. Nov. 4, 2019).

Plaintiffs additionally point to recalls related to the risk of the e-tron SUV battery modules experiencing short circuits including in June 2019, December 2023,

March 2024 and September 2024. Am. Compl. ¶¶ 52–63. Volkswagen correctly observes that certain recalls "post-dated" Plaintiffs' purchases. [Doc. 31 at 26]. But recalls and associated investigations do not *necessarily* arise immediately upon discovery of a defect, and thus they may, at least at the pleading stage, support an inference of earlier awareness of the defect. Cunningham v. Ford Motor Co., 641 F. Supp. 3d 400, 408 (E.D. Mich. 2022) (finding that "recalls do not occur the instant that an automaker learns of a defect," but rather, that they "occur after a period of investigations, analysis and deliberation" and thus, may serve to indicate pre-sale knowledge). Here, Plaintiffs do not rely on the post-dated recalls standing alone but as an additional circumstance going to Volkswagen's alleged pre-sale knowledge. Having considered the allegations collectively and in the light most favorable to Plaintiffs, the Court finds that the Amended Complaint plausibly alleges that Volkswagen had pre-sale knowledge of the alleged Battery Defect. See Pinon, 2019 WL 11648560, at *24 (collecting cases and recognizing that courts may consider allegations in the aggregate when evaluating knowledge). Altogether, the allegations of specific pre-sale testing procedures, thermal events and investigations, recalls, and complaints support a reasonable inference of pre-sale knowledge at the pleading stage. Accordingly, dismissal of Plaintiffs' fraudulent concealment (Count I) and violations of GFBPA claims (Count IV) is not warranted based on Volkswagen's

argument that Plaintiffs failed to plausibly allege Volkswagen's pre-sale knowledge of the Battery Defect.

*b. Duty to disclose*

Volkswagen argues that Plaintiffs' fraudulent concealment claim (Count I) fails because Plaintiffs do not plead facts establishing that Volkswagen had a duty to disclose the Battery Defect. [Doc. 29-1 at 42]. Volkswagen maintains that there is no duty by remote manufacturers to individuals, like Plaintiffs, who purchased their vehicles from independent third-party retailers and had no direct interaction with the defendant. [Doc. 29-1 at 42]. The Court disagrees.

Under Georgia law, the "[s]uppression of a material fact which a party is under an obligation to communicate constitutes fraud" and "[t]he obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." O.C.G.A. § 23-2-53. "The particular circumstances of the case may give rise to an obligation to communicate where there is a concealment of intrinsic qualities of the article which the other party by the exercise of ordinary prudence and caution could not discover." McCabe, 948 F. Supp. 2d at 1368 (cleaned up). Thus, a duty to disclose may arise where a manufacturer has superior knowledge of a defect that consumers could not discover through reasonable diligence. See Bolling, 2024 WL 3972987, at *16. Whether a certain circumstance gives rise to a duty to disclose is generally a question for the

jury. ASC Constr. Equip. USA, Inc. v. City Com. Real Estate, Inc., 693 S.E.2d 559, 565 (Ga. App. 2010).

Here, as discussed above, Plaintiffs plausibly allege that Volkswagen had pre-sale knowledge of the Battery Defect. Plaintiffs further allege that the defect concerned the Class Vehicles' high-voltage batteries and implicated vehicle safety and performance, and that the defect could not have been discovered by consumers through the exercise of ordinary prudence. Am. Compl. ¶¶ 64–69, 97–115. Thus, Volkswagen's alleged superior knowledge of the Battery Defect and Plaintiffs' alleged inability to discover it through reasonable diligence are sufficient at the pleading stage to plausibly allege circumstances giving rise to a duty to disclose. See Bolling, 2024 WL 3972987, at *16. Accordingly, Plaintiffs have plausibly alleged a duty to disclose the Battery Defect.

**D. Statute of Limitations**

Volkswagen contends that Kelly's claims for negligent misrepresentation and breach of warranty are time-barred. [Doc. 29-1 at 5–6]. Under Georgia law, a four-year statute of limitations, beginning from when the right of action accrues, applies to negligent misrepresentation and to breach of warranty claims. O.C.G.A. §§ 9-3-31 (negligent misrepresentation) and 11-2-725 (warranty claims). Volkswagen contends that these causes of action accrued when Kelly bought his vehicle in August 2020 and that because Kelly did not file this action until January 7, 2025, his claims

are well outside of the four-year limitations period. [Doc. 29-1 at 10]. Plaintiffs respond that Volkswagen's alleged fraudulent concealment tolled the limitations period. [Doc. 30 at 8–11]. Because the Amended Complaint alleges facts sufficient to support tolling, the Court agrees.

"[W]here the gravamen of the underlying complaint is actual fraud, the limitation period is tolled until such fraud is discovered, or could have been discovered by the exercise of ordinary care and diligence." Hunter, Maclean, Exley & Dunn, P.C. v. Frame, 507 S.E.2d 411, 413 (Ga. 1998) (cleaned up); Doe v. St. Joseph's Catholic Church, 870 S.E.2d 365, 371 n.5 (Ga. 2022) (holding that allegations of actual fraud may toll the statute of limitations as to related non-fraud claims); see O.C.G.A. § 9-3-96.

Volkswagen argues that the fraudulent concealment doctrine applies only to Plaintiffs' fraud-based claims. [Doc. 31 at 8]. Not so. The Georgia Supreme Court has recognized that allegations of actual fraud may toll the statute of limitations both when fraud is the gravamen of the action and when separate and independent actual fraud deters a plaintiff from timely bringing related non-fraud claims. St. Joseph's Catholic Church, 870 S.E.2d at 371 n.5.

To toll a limitations period, a plaintiff must establish three elements: (1) "the defendant committed actual fraud," (2) "the fraud concealed the cause of action from the plaintiff, such that the plaintiff was debarred or deterred from bringing an

action;" and (3) "the plaintiff exercised reasonable diligence to discover his cause of action despite his failure to do so within the statute of limitation." St. Joseph's Catholic Church, 870 S.E.2d at 371 (cleaned up). At this pre-discovery stage, the Court looks to Plaintiffs' Amended Complaint to determine whether Plaintiffs allege facts sufficient to support tolling.

To allege that a defendant committed actual fraud, the complaint must include facts indicating that the defendant committed "actual fraud involving moral turpitude" or "fraudulent[ly] breach[ed] . . . a duty to disclose that exists because of a relationship of trust and confidence." St. Joseph's Catholic Church, 870 S.E.2d at 372. The plaintiff must plead allegations of fraud with sufficient particularity to satisfy Rule 9(b). Wang v. Am. Equity Inv. Life Ins. Co., 2021 U.S. Dist. LEXIS 37140, at *8 (N.D. Ga. Mar. 1, 2021) (applying Rule 9(b) to tolling allegations and requiring plaintiffs to include "factual explanation of the who, what, when, where and how of the representations or omissions rather than a formulaic recitation of the elements of a cause of action").

Here, as discussed, Plaintiffs plausibly allege that Volkswagen had a duty to disclose the Battery Defect based on Volkswagen's alleged superior knowledge of the Defect and Plaintiffs' inability to discover it through reasonable diligence. See supra Section IV.C.4.b. Plaintiffs further allege that Volkswagen made affirmative misrepresentations by marketing the Class Vehicles as safe, reliable, durable, and

capable of achieving advertised battery performance while allegedly concealing the Battery Defect. Am. Compl. ¶¶ 19–23, 30, 33, 65–71, 83–95, 105–111. Specifically, Plaintiffs allege that Volkswagen made false representations about the performance and safety of the Class Vehicles, including the batteries' electrical capacity and the "advanced thermal management systems" that would make them safe. Id. ¶ 33. Plaintiffs also allege that Volkswagen's false representations prevented Kelly from filing suit earlier because Kelly had no way of knowing that his vehicle had the Battery Defect until it was subject to a recall. Id. ¶ 73. Finally, Plaintiffs' Amended Complaint asserts that, despite the exercise of diligence, Plaintiffs could not have discovered the Battery Defect—or Volkswagen's alleged fraud—within the statutory period "because a defect *inside* an electric battery is not visible to the consumer and is not detectible by a consumer." Id. ¶¶ 85, 112. These allegations, and those described below with respect to Plaintiffs' fraudulent concealment claims, are sufficient to support Plaintiffs' tolling theory under O.C.G.A. § 9-3-96.

### E. Equitable Relief

Volkswagen seeks to dismiss Plaintiffs' equitable claims, arguing that Plaintiffs fail to allege the absence of an adequate remedy at law and lack standing to pursue injunctive relief. [Doc. 29-1 at 43–45]. Volkswagen further argues that the requested injunctive relief is preempted by the Safety Act and the doctrine of primary jurisdiction. [Id. at 45–47]. Plaintiffs seek injunctive and equitable relief in the form

of a comprehensive program to adequately repair or replace the batteries in all Class Vehicles, and/or buy back all Class Vehicles, as well as reimbursement for costs and economic losses. Am. Compl. at 81.

1. Adequate Remedy at Law

Volkswagen argues that Plaintiffs' requests for equitable relief should be dismissed because they do not allege that Plaintiffs lack any adequate alternate remedy at law. [Doc. 29-1 at 43–44]. Plaintiffs respond that dismissal is premature because they may plead legal and equitable remedies in the alternative and discovery may reveal their legal remedies are inadequate. [Doc. 30 at 30]. The Court agrees.

Although equitable relief ultimately may not be awarded where there exists an adequate remedy at law, Plaintiffs may plead alternative equitable relief. See Fed. R. Civ. P. 8(a)(3); Bolling, 2024 WL 3972987, at *6. Accordingly, the availability of a potentially adequate remedy at law does not warrant dismissal of Plaintiffs' alternative requests for equitable relief at the pleading stage.

2. Standing for Injunctive Relief

Volkswagen next argues that Plaintiffs lack Article III standing to seek injunctive relief because they fail to allege a real and immediate threat of future injury. [Doc. 29-1 at 44–45]. Plaintiffs respond that they continue to own the Class Vehicles and face an ongoing risk of fire, loss of power, and other harm resulting from the alleged Battery Defect. [Doc. 30 at 36–37].

"Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." Kennedy v. Floridian Hotel, Inc., 998 F.3d 1221, 1229 (11th Cir. 2021) (cleaned up). Here, Plaintiffs allege that they currently own vehicles that Volkswagen has identified as subject to safety recalls involving the high-voltage batteries. Am. Compl. ¶¶ 73, 79. Kelly alleges that the recall applicable to his vehicle warns that a potentially critical condition in the high-voltage battery modules may result in thermal overload, smoke, or fire, and that when he sought repair of the Battery Defect, the dealership informed him that it could not address the defect or provide a date when it would be able to do so. Id. ¶¶ 73–75. Horton similarly alleges that his vehicle is subject to a recall warning that short circuits within the high-voltage battery modules can increase the risk of fire. Id. ¶ 79. According to Horton, on February 22, 2025, after his vehicle displayed an electrical-error warning directing him to park in a safe place, his vehicle was towed to an Audi dealership but returned without information on whether the recall condition had been addressed. Id. ¶ 80. From these allegations, it is reasonable to infer that Plaintiffs continue to face a risk that their Vehicles will experience a Defect-related thermal overload or fire.

Plaintiffs seek injunctive relief requiring Volkswagen to implement a comprehensive program to repair or replace the high-voltage batteries in the Class

Vehicles or buy back the affected vehicles. Am. Compl. at 81. Thus, the requested relief is directed at the alleged continuing safety risk associated with the vehicles Plaintiffs presently own.

Volkswagen relies on Bauser v. Porsche Cars North America, Inc., 2024 WL 2406884, at *19 (N.D. Ga. Mar. 25, 2024), in which this Court concluded that an asserted future risk of harm from an allegedly defective charger was too speculative where the plaintiff had never experienced the alleged overheating condition and it was uncertain whether a non-defective replacement charger capable of the advertised performance existed. But the circumstances alleged here are materially different. Unlike in Bauser, here, Plaintiffs allege that their Vehicles are subject to safety recalls involving the alleged Battery Defect, that no adequate repair was available to Kelly when he sought one, and that Horton has already experienced an electrical malfunction. Am. Compl. ¶¶ 73–75, 79–80.

These allegations more closely resemble the allegations in Sowa v. Mercedes-Benz Group AG, where the court concluded that owners of vehicles containing an alleged latent safety defect sufficiently alleged a likelihood of future injury because the affected vehicles remained in use and continued to pose a safety hazard. 764 F. Supp. 3d 1233, 1252–53 (N.D. Ga. Dec. 31, 2024). Similarly, here, Plaintiffs' continued ownership of Vehicles allegedly subject to an unresolved safety defect that poses a risk of, among other things, overheating and fire establishes a non-

conjectural threat of future injury at the pleading stage. Accordingly, the Court finds Plaintiffs have Article III standing to seek injunctive relief.

3. Safety Act preemption and doctrine of primary jurisdiction

Volkswagen alternatively seeks the dismissal of Plaintiffs' request for injunctive relief on the basis that the requested relief is preempted by the Federal Motor Vehicle Safety Act ("Safety Act") and barred by the doctrine of primary jurisdiction. [Doc. 29-1 at 45–46]. Specifically, Volkswagen contends that Plaintiffs seek what amounts to a judicial recall that would interfere with NHTSA's administration of the recalls at issue. The Court disagrees.

First, the Safety Act does not categorically preempt all requests for equitable relief relating to allegedly defective motor vehicles. See Xu v. Porsche Cars N. Am., Inc., 2020 WL 13892590, at *18 (N.D. Ga. Nov. 30, 2020). At this stage, the Court cannot conclude that every form of equitable relief requested by Plaintiffs necessarily conflicts with the Safety Act or NHTSA's authority over vehicle recalls. Volkswagen's reliance on Cohen v. Subaru of America, Inc., 2022 WL 721307, at *38–40 (D.N.J. Mar. 10, 2022), does not compel a different result. There, the court held that the Safety Act preempted the plaintiffs' negligent-recall claim because permitting the plaintiffs to use state negligence law to challenge the sufficiency of Subaru's recall efforts would interfere with the federal statutory scheme governing vehicle recalls. Id. at *40. But Plaintiffs do not assert a negligent-recall claim or

otherwise seek to impose liability on Volkswagen for negligently conducting a federally regulated recall. Although Volkswagen characterizes Plaintiffs' requested relief as a "judicial recall," Plaintiffs request several forms of relief in connection with their underlying state-law claims, including repair, replacement, reimbursement, and buyback of allegedly defective Vehicles. Am. Compl. at 81. And the Court is unable to conclude at this stage that the Safety Act preempts each form of equitable relief that Plaintiffs request.

Second, Volkswagen fails to show that the NHTSA's oversight of recalls related to the alleged Battery Defect requires the Court to dismiss the equitable relief claims under the doctrine of primary jurisdiction. [Docs. 29-1 at 46; 31 at 30–31]. "Primary jurisdiction is a prudential doctrine designed to allocate authority between courts and administrative agencies." Sierra v. City of Hallandale Beach, 904 F.3d 1343, 1350 (11th Cir. 2018) (cleaned up). The doctrine is "reserved for a limited set of circumstances" where resolution of the action requires the court to decide issues committed to an agency's special competence. Xu, 2020 WL 13892590, at *18. In determining whether the doctrine applies, courts consider whether the issues fall within the agency's expertise and whether referral would promote uniformity. See Norfolk S. Ry. Co. v. Judge Warehousing, LLC, 409 F. Supp. 3d 1350, 1355, 1358 (S.D. Ga. 2019).

Volkswagen emphasizes that the NHTSA is supervising the alleged Battery Defect-related recalls and argues that questions concerning the issuance and scope of a recall are within the NHTSA's authority. [Doc. 31 at 30–31]. Plaintiffs, however, do not ask the Court to determine whether the NHTSA should order a recall or to prescribe the scope of an NHTSA-administered recall. Rather, as discussed above, Plaintiffs seek various forms of equitable relief in connection with their underlying state-law claims. Am. Compl. at 81. Volkswagen has therefore not shown that adjudication of Plaintiffs' underlying state-law claims necessarily requires the Court to resolve an issue committed to NHTSA's special competence. See Xu, 2020 WL 13892590, at *18 (declining to apply the primary jurisdiction doctrine to claims arising from alleged automobile defects).

The existence of ongoing NHTSA-supervised recalls does not compel a different conclusion at this stage. To the extent that certain requested forms of equitable relief ultimately may conflict with NHTSA's administration of recalls or require the Court to determine the scope of any relevant recall, Volkswagen may raise that issue if and when such relief is considered. At this stage, however, dismissal of Plaintiffs' claims for equitable relief under the primary jurisdiction doctrine is unwarranted.

## V. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss. [Doc. 29]. Specifically, the Court **GRANTS** the Motion to the extent that Plaintiffs' breach of express warranty claim (Count V) is premised on an alleged design defect and **DENIES** the Motion in all other respects.

Defendant **SHALL** file its Answer to the Amended Complaint within **30 DAYS** of the entry of this order.

**SO ORDERED**, this 27th day of August, 2026.

Eleanor L. Ross
United States District Judge
Northern District of Georgia